TRUE W. TOWNSEND *vs.* NICKERSON WHARF COMPANY.

Suffolk.   March 2. — May 8, 1875.   MORTON & ENDICOTT, JJ., absent.

If a lessor refuses to deliver the whole of the premises demised to a lessee, and the lessee enters into possession of part and pays the rent for the whole, his measure of damages is the diminished value of his lease; and he cannot recover the damages he has sustained in his business, in the absence of evidence that the use to which the building was to be put was known to the lessor.

CONTRACT on the following agreement signed by the defendant: "Boston, June 9, 1873. Agreed to let to T. W. Townsend store No. 14 Nickerson Wharf, and the wooden building adjoining, (which he has occupied for some months past,) for the term of one year from May 10, 1873, with the privilege of two years; rent to be paid quarterly in advance, at the rate of seventy-five dollars for each quarter.   Store No. 14 is now occupied for storage of chalk, and the amount collected for storage is to be paid to Mr. Townsend or deducted from his rent bill.   In case this property is destroyed by fire, this agreement to be thereby terminated."   Writ dated September 17, 1873.   The declaration alleged special damages.   Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions in substance as follows :

There was evidence tending to show that immediately upon the execution of said contract or lease, the plaintiff purchased and erected about $1000 worth of machinery on a portion of the premises for the purpose of manufacturing whiting, and notified Mr. Stickney, the owner of the chalk, mentioned in the agreement, to remove the same at once from the store No. 14; that Stickney replied that he should move his chalk when he pleased; which fact the plaintiff communicated to the defendant, whereupon Stickney was notified that the plaintiff wanted the store; that the plaintiff's mill was ready to run on July 10, and he then needed the store No. 14 to use as a drying room; that the defendant then refused to deliver possession of the store or the key of the same to plaintiff, unless the plaintiff would indemnify him against any suit by Stickney, and took no steps to remove Stickney, until October 20, 1873.   The plaintiff occupied the rest of the premises and paid full rent.   The plaintiff put in evi-

dence tending to show that after July 10, 1873, he could not have removed his machinery to another place and got the same in operation in season to have manufactured whiting in the season of 1873 ; and that he had suffered special damage by not being able to get the store.

The plaintiff also offered evidence tending to show that his general business was greatly injured ; that he was compelled to purchase four hundred barrels of whiting in Philadelphia and ship the same to Boston to fill his orders during the time he was kept out of possession by the defendant; that each of the barrels so shipped cost him ninety cents per barrel more than the whiting he manufactured at his mill, and that he would not have had to purchase a single barrel if he could have had possession of the store.

But the judge excluded the evidence, and instructed the jury that the plaintiff was entitled to recover for the withholding of possession of part of the premises, and that the measure of damages was simply the diminished value of his lease ; and that he could not recover anything for any damages that he might have suffered in his business, by reason of the acts of the defendant in keeping him out of the store, nor for loss of profits in his business ; that he was restricted to the value of his lease, and that as to what that value was, the amount of rent the plaintiff paid was an important element in aiding them to estimate the amount of damages he was entitled to, although it was not conclusive, and if the lease was worth more they should allow its real value, and as the plaintiff was only partially disturbed in his possession, they were to determine whether he was injured two thirds, one half or one third in his possession, or whether the part actually occupied was practically worthless to him ; but they could only return what damages the plaintiff sustained between July 10, 1873, and the date of the writ.

The jury returned a verdict for the plaintiff for $56.31 ; and the plaintiff alleged exceptions.

*C. H. Chellis*, for the plaintiff.

*C. R. Train & J. O. Teele*, for the defendant.

AMES, J. It is true, as a general rule, that if possession of demised premises be withheld by the lessor or by his authority, so that the lessee cannot occupy them at all, he may maintain an action against the lessor for the breach of the agreement; and in that

case the measure of damages would be the difference between the actual value of the lease and the rent which the tenant would have been bound to pay by its terms. *Trull* v. *Granger*, 4 Seld. 115. But in this case the tenant was not excluded from the whole of the demised premises. He accepted the lease. He occupied all of the premises that he could get possession of, and although, according to his complaint, the contract was but partially fulfilled by the defendant, he has paid the rent for the whole term, exactly as he would have done if he had occupied all that the lease purports to give him. His claim for damages, therefore, is for the wrong done in refusing to allow him to take possession of a portion of the demised premises, and depriving him of the beneficial enjoyment of that portion.

The contract between the parties is inartificially drawn. On the plaintiff's construction of it, and assuming, in the absence of any exception by the defendant, that it was the defendant's business, and not the plaintiff's, to expel the occupant of the storehouse, and that by the failure to do so the contract was violated by the defendant, and that the action can therefore be maintained, the damages which the plaintiff would be entitled to recover would depend upon the circumstances under which the contract was made. If the lessor knew that the tenant was engaged in the manufacture of whiting, intended to put the premises to that special use, intended also to erect machinery and incur expense in preparation for the business, and needed or expected to use all the leased property for that special purpose, so that the exclusion of him from an important part of the premises would prevent the successful prosecution of the business, and render the whole or part of his outlay wholly useless, the rule as to the measure of damages, given by the presiding judge, would be wholly inadequate. The fact that the property was understood to be let for a special purpose of such a kind may be proved by oral evidence, and need not be stated in the lease. But if, on the other hand, nothing appears except that the tenant hired the premises, and accepted the lease, and no special use to which they were to be put was made known before the hiring to the lessor, the rule of damages laid down by the court would be correct. So far as there is any uncertainty upon this point, it was the duty of the plaintiff, as the excepting party, to fur-

nish the explanation. As the bill of exceptions stands, we cannot say that there was a hiring of the premises for a special purpose, or that there was evidence tending to show that such was the fact, and therefore it is not apparent that there was any error in the ruling of the court. For this reason, we must order that the                                           *Exceptions be overruled.*