JAMES T. MANNING *vs.* ANDREW L. FITCH.

Worcester. Oct. 1, 1884. — Jan. 12, 1885. C. ALLEN & COLBURN, JJ., absent.

The condition of a mortgage of a farm having been broken, the mortgagee covenanted with the mortgagor, for the term of three years, not to demand payment of the mortgage note, not to begin proceedings to foreclose the mortgage, and not to eject the mortgagor from the farm; and the mortgagor covenanted that he would, during the three years, use and expend upon the farm the hay and fodder produced upon it for the use of the farm in the usual course of husbandry. Before the expiration of the three years, the mortgagee assigned the mortgage to a third person, who foreclosed the mortgage. *Held,* in an action by the mortgagor against the mortgagee, that there was a breach of the defendant's covenants. *Held, also,* that evidence, offered in defence, that, while the plaintiff was in possession of the farm, there was not as much hay and fodder raised on the farm as it was capable of producing in the usual course of husbandry, or as was usual on like farms in the neighborhood, was rightly excluded. *Held, also,* that the plaintiff could properly testify what the farm was worth to him with his stock upon it from the date of the assignment to the end of the three years' term, it appearing that the farm was used as a milk farm, and that the plaintiff sold a certain number of cans of milk each day.

CONTRACT for a breach of the following agreement in writing signed by the parties to this action: " This memorandum of an agreement made this thirteenth day of July, A. D. 1880, by and between Andrew L. Fitch and James T. Manning, both of said Sterling, witnesseth that, in consideration of an agreement between said Fitch and Manning, dated July 9th, 1880, and guaranteed by A. S. Davidson, and for other good and valuable considerations, the said Fitch hereby covenants with the said Manning and agrees with him not to demand of said Manning the payment of the principal named in a certain note secured by

mortgage given by said Manning to said Fitch for the sum of thirteen hundred dollars, dated on or about March 15th, 1879, nor to begin any proceedings of foreclosure upon said mortgage, and said Fitch further covenants and agrees with said Manning not to eject said Manning from the estate secured by said mortgage, this agreement and the covenant thereof to run and be in force three years from the date hereof." Answer a general denial.

Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

The agreement declared on, and the following agreement, signed by the parties, the performance of which on the part of the plaintiff was guaranteed in writing by a third person, were made at the same time, and formed one contract.

"This memorandum of an agreement made this ninth day of July, A. D. 1880, by and between Andrew L. Fitch of Sterling and James T. Manning of Sterling, witnesseth that, in consideration of the waiver of a breach of the condition of a certain mortgage to said Fitch, dated March 15th, 1879, the said Manning hereby covenants and agrees with the said Fitch to use and expend the hay and fodder produced on the farm described in said mortgage in, upon, and for the use of said farm in the usual course of husbandry thereon, the privilege of selling not exceeding four tons being given said Manning. This agreement to continue and be in force three years from this date."

It was admitted that the defendant, on June 2, 1882, executed an assignment of the note and mortgage mentioned in the agreement declared on to one Daniel McBain; and that McBain, in execution of the power in said mortgage, on June 8, 1882, began foreclosure proceedings, and, on July 1 following, sold the mortgaged premises by public auction. Said foreclosure proceedings were regular in form, and in accordance with the power contained in the mortgage.

The defendant contended, and offered evidence tending to prove, that the plaintiff had violated his covenants contained in the agreement dated July 9, and, for the purpose of proving such breach, asked a witness the following question: "Was there as much hay and fodder raised on the mortgaged farm in 1880 or 1881 as the farm was capable of producing in the usual course

of husbandry, or as was usual on like farms in that neighborhood?" The judge excluded this question.

The plaintiff testified that he was engaged in the business of selling milk, and produced on said farm a portion of the milk so sold, and purchased the remainder of the farmers in that vicinity, producing about ten cans daily, and purchasing about sixteen, his sales averaging about twenty-six cans per day. To show the damage he sustained by the foreclosure he was then asked the following question: "What was the farm worth from June 1, 1882, to July, 1883, with your stock of cows, to you?" The defendant objected to this question; but the judge allowed the plaintiff to answer it.

The defendant asked the judge to instruct the jury as follows: "Under the agreement declared on, the defendant was not precluded from assigning said mortgage, and is not responsible for any act of the assignee to which he was not a party in the matter of the foreclosure or the consequences thereof, and, unless the jury find that said assignment of the plaintiff's mortgage was made for the purpose of foreclosure, and that the defendant in making the assignment knew of such purpose or participated therein, he is not liable." This instruction the judge refused to give; but instructed the jury as follows: "The contract between the defendant and the plaintiff did not forbid the defendant's assignment of the mortgage, on terms which did not give the assignee any right to foreclose the mortgage and dispossess the plaintiff of the farm to which the mortgage applied; but if the defendant made an assignment which disabled him from adhering to that contract, and thereupon the assignee of the mortgage proceeded to foreclose the mortgage and to dispossess the plaintiff of the farm to which the mortgage applied, the defendant would be responsible for that foreclosure and dispossession of the plaintiff as for a violation of that contract, whether the assignment was made for the purpose of such foreclosure and dispossession, and the assignee's conduct therein was instigated and procured by the defendant for such purpose, or whether the assignee acted therein on his own motion and in his own interest only, under an assignment of the mortgage made to him by the defendant in good faith, and for a valuable consideration."

The jury returned a verdict for the plaintiff in the sum of $384.15, and the defendant alleged exceptions.

*J. W. Corcoran*, for the defendant.

*W. S. B. Hopkins & J. Smith*, for the plaintiff.

HOLMES, J.   1. The defendant's covenant with the plaintiff, not to demand payment of the principal of his mortgage note, nor to begin any proceedings for foreclosure of the mortgage, and not to eject the defendant from the mortgaged land for three years, fairly construed, meant more than a covenant against these acts on the part of the defendant personally.   It could not be rendered nugatory by an assignment, but was broken when the defendant's assignee sold under the power in the mortgage. This construction is confirmed by the plaintiff's covenant to expend the hay and fodder produced upon the land for the use of the land for three years.   The ruling on this point was right.

2. The plaintiff's covenant just mentioned did not require him to raise any particular amount of hay and fodder, but only to use what was raised in a certain way, so as not to exhaust the farm.   The question whether as much was raised as the farm was capable of producing in the usual course of husbandry, or as was usual on like farms in the neighborhood, was rightly excluded for this reason, as well as because the defendant's covenant was independent.

3. The plaintiff was allowed to testify what the farm was worth to him from June 1, 1882, to July, 1883, with his stock of cows ; and the defendant excepted.   Generally speaking, such a question is objectionable.   But, in view of the argument, and all the circumstances, we assume that it was understood to mean simply, What was the money value of the farm to one engaged in your special business, and in your general position with regard to it?   And so understood, we cannot say, on the bill of exceptions, that it was improper.   It does not appear what rule of damages was laid down to the jury ; but, assuming that they were allowed to adopt the standard suggested by the question and answer, still we cannot say from anything that appears in the bill of exceptions that the defendant's contract was not made in express contemplation of the plaintiff's use of the farm as a milk farm.   If there was no such evidence,

it was for the defendant to disclose the fact in his bill of exceptions. It would rather seem that the plaintiff was using the farm in that way at the time the contract was made; that the defendant knew that fact; and that the contract was made for the very purpose of preventing the breaking up of the plaintiff's business, according to the understanding of both parties. In that case, at least, the evidence was admissible. *Townsend* v. *Nickerson Wharf Co.* 117 Mass. 501, 503. See *Hydraulic Engineering Co.* v. *McHaffie*, 4 Q. B. D. 670; *Bartlett* v. *Greenleaf*, 11 Gray, 98, 102. In *Goddard* v. *Barnard*, 16 Gray, 205, where special damage was disallowed for breach of a contract that a roof should be tight for five years, and in default to make the same satisfactory, the decision was put on the ground that the language of the contract itself showed that the only liability contemplated for leaking was the cost of a satisfactory roof, and that the circumstances, including the fact that it was known to be an experiment, confirmed the literal import of the words.

*Exceptions overruled.*