CHARLES H. NEAL *vs.* SARAH A. JEFFERSON, executrix.

Plymouth.   January 11, 1912. — September 11, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON & DECOURCY, JJ.

*Landlord and Tenant*, Covenant to renew.  *Covenant.   Damages*, In contract.

In an action against a lessor of real estate for a breach of a covenant, in a lease for one year, to execute before a certain date at the request of the plaintiff a new lease for the further term of two years at the same rent, it is no defense that before such request the lessor sold and conveyed the leased premises to a third person with notice of all the terms of the lease.  In such an action it is not material to determine whether the plaintiff could enforce the covenant specifically against the defendant's grantee.

In an action for the breach of a covenant, in a lease to the plaintiff of a hotel in Florida for one year, to execute at the request of the plaintiff a new lease for the further term of two years at the same rent, where a breach of the covenant by the defendant was proved, it appeared that the property best could be used as a hotel for winter visitors and was intended so to be used, and that when the lease was made both parties understood that the plaintiff did not expect to make any substantial profit during the first year but did expect to do so during the next two years and that it was for this reason that the covenant for renewal was inserted.  The plaintiff, who had had long experience in the hotel business, testified to his actual receipts and expenditures during the time that he was in possession of the hotel and as an expert testified to his opinion of what could be realized during the two following years and of the consequent value of the lease-hold estate.  *Held*, that in the assessment of damages the jury properly could consider the evidence of prospective profits and that this evidence was not so speculative or uncertain as to preclude the recovery of such profits as the plaintiff had shown that he would have realized.

In an action for the breach of a covenant, in a lease to the plaintiff of a hotel in Florida for one year, to execute before a certain date at the request of the plaintiff a new lease for the further term of two years at the same rent, it appeared that before such request the defendant sold and conveyed the hotel to a third person, who, two or three months before the date when the plaintiff was entitled to the new lease from the defendant, informed the plaintiff of his purchase and offered to give the plaintiff a new lease at a somewhat higher rent.  The plaintiff refused to accept such a lease and demanded from the defendant performance of the covenant of renewal.  There was evidence of prospective profits which the plaintiff was entitled to have considered by the jury.  *Held*, that the plaintiff was not bound to accept the offer of the third person for the purpose of reducing the damages which otherwise he might claim, because until the time for the performance of the covenant he had the right to assume that the defendant would perform or would procure the performance of his obligation.

CONTRACT for the alleged breach of a covenant of renewal in a lease. Writ dated October 31, 1910.

In the Superior Court the case was tried before *Dubuque*, J. The defendant was the executrix of the will of Joseph Jefferson, late of Bourne. The lease was dated May 22, 1909, and was for the term of one year from November 1, 1909, at the annual rent of $1,000. The lessor was described as "the estate of Joseph Jefferson." The covenant sued upon was as follows: "And the said lessor further covenants that it will, on or before the first day of June, A. D. 1910, at the request of the said lessee, execute to and with him a new lease of the premises herein leased, for the further term of two years, to commence from the expiration of the term hereby granted, at the same yearly rent, payable in like manner and with and subject to the like covenants, agreements and provisos, except the covenant for further renewal, as are herein contained."

The leased premises consisted of the Hotel Jefferson in West Palm Beach in Florida and an adjoining cottage with the furnishings. The plaintiff had conducted a hotel at Onset in this Commonwealth for fourteen years and had been in the hotel business since 1876. The plaintiff testified that at the time of the negotiations for the lease he told the defendant's agent that he did not expect to be able in the first year to do more than make his expenses, that the business should double in the second year and in the year to follow should increase one third.

On March 10, 1910, the defendant, as executrix, sold the leased premises to two brothers named Anthony and delivered to them the duplicate original of the lease to the plaintiff. On March 27, 1910, the plaintiff closed the hotel and at the end of March left West Palm Beach. The plaintiff testified that before he left West Palm Beach the Anthony Brothers told him that they had bought the hotel and tried to get him to take a new lease at a higher rent. In a letter to the plaintiff dated April 16, 1910, one of the Anthonys named the terms on which they would give the plaintiff a lease for three years. After a correspondence between the plaintiff and the agent of the defendant, in which the plaintiff insisted on his right to a renewal of the lease for two years, the plaintiff made a formal demand for such renewal in a letter dated May 9, 1910, to which the agent of the defendant replied that, as the property was sold on March 10 and the lease was as-

signed to the purchasers, the Joseph Jefferson estate had nothing whatever to do with any extension of the lease. The plaintiff testified that for the season of 1909–1910 his total receipts from the leased property as shown by the cash book were $6,152.59 and that his total expenditures were $5,239.28, leaving a balance of $913.31; that he estimated the receipts for the following two years at $8,000 a year and the expenditures at $6,000 a year; that in his judgment the money value of the leased property on June 1, 1910, for two years at a rent of $1,000 a year to a person in his position engaged in his special business would be $2,000 a year or $4,000 for the two years and that this amount would be clear profit.

At the close of the evidence both parties asked for certain rulings. The defendant asked the judge for twenty-one rulings, which included the following:

"1. On all the evidence the plaintiff is not entitled to recover."

"6. After the transfer of the Hotel Jefferson and Huffstetter Cottage to the Anthonys, with notice of the lease to the plaintiff and the covenant for renewal contained therein, Sarah A. Jefferson was not liable for any failure of the Anthonys to respect the plaintiff's right to a renewal lease.

"7. After the transfer of the Hotel Jefferson and Huffstetter Cottage to the Anthonys, with notice of the lease to the plaintiff and the covenant for renewal contained therein, Sarah A. Jefferson was no longer liable on that covenant for renewal."

"10. If you find that Sarah A. Jefferson, executrix, transferred the reversion in the Hotel Jefferson and Huffstetter Cottage to persons by the name of Anthony, who had notice of the lease of the plaintiff and also the covenants contained therein, then, after that transfer, Sarah A. Jefferson, executrix, would stand only in the position of surety for the performance of those covenants by the Anthonys."

"12. If you find that while the plaintiff was in possession, as lessee, of the Hotel Jefferson and Huffstetter Cottage he had notice that the reversion had been transferred to the Anthonys with notice of his lease and the covenants contained therein, and thereafter, knowing that the Anthonys would not execute a renewal lease, relinquished possession of the premises and gave no notice — until a few days before the bringing of this action — to Sarah A. Jefferson that the Anthonys had not executed their renewal

lease when it was due, then the plaintiff lost his rights against Sarah A. Jefferson in regard to a renewal lease, and his sole remedy is against the Anthonys.

"13. The measure of the damages, if any, which the plaintiff is entitled to recover is the difference between the amount of rent which would have been payable by him under the renewal lease and the rental value of the premises

"14. Neither the profits of the plaintiff for the year November 1, 1909,–November 1, 1910, nor his prospective profits for the two following years, are evidence of the rental value of the premises.

"15. In determining the rental value of the premises covered by the lease for the years November 1, 1910,–November 1, 1912, you should consider the amount of rent which lessees were willing to pay for these premises in those years and years a short time before.

"16. In determining the rental value of the premises covered by the lease for the years November 1, 1910,–November 1, 1912, you should not consider the plaintiff's prospective profits."

"21. In determining the rental value of the premises covered by the lease for the years November 1, 1910,–November 1, 1912, if you consider any prospective profits of the plaintiff, you must consider, in reduction of these profits, any opportunity the plaintiff may have had to obtain the Hotel Jefferson for those years from the Anthonys."

The judge refused to make any of these rulings.

The first ground of defense in the defendant's amended answer, referred to in the second ruling requested by the plaintiff, was as follows: "That on or about March 12, 1910, the defendant, as executrix of the estate of Joseph Jefferson, conveyed all her rights in and to the reversion in the premises referred to in the plaintiff's declaration to persons by the name of Anthony, and at or before the time of said conveyance gave to said persons notice of the existence of all the terms of the lease set out in paragraph three of the plaintiff's declaration."

The judge gave certain of the rulings requested by the plaintiff, of which the first and second, referred to in the opinion, were as follows:

1. It is admitted that the lease containing a covenant of renewal was executed in behalf of the defendant and under author-

ity from her; that the plaintiff performed all the covenants which were to be performed by him and duly demanded a renewal; and that the defendant failed to procure such renewal for the plaintiff. On these admitted facts the plaintiff is entitled to recover unless the defendant has established some defense.

2. With respect to the first ground of defense in the defendant's amended answer, I instruct you that that raises solely a question of law, and I further instruct you that as a matter of law the facts there alleged constitute no defense. The defendant could not, and did not, discharge herself of liability on the said covenant of renewal, even if you are satisfied that she sold the reversion in the leased premises to other persons and gave them notice of the existence of all the terms of the said lease. The said covenant of renewal was a personal obligation of the defendant, and her liability thereunder to the plaintiff was not discharged by any relations or dealings between her and third parties; and if said covenant was broken the plaintiff was not bound to try to obtain redress against such third parties. The law on that point has been stated by the Supreme Judicial Court in these words, "Lessors cannot get rid of the burden of their contracts by conveying their land. In the case of the tenant as in that of the landlord, 'it cannot be endured that he should afterwards be deprived of his action on the covenant to which he trusted by an act to which he cannot object.'"

In regard to the recovery of anticipated profits the judge, among other instructions, instructed the jury that they were to consider such profits only if they could find with a fair degree of certainty what the loss was and that it was the natural consequence of a breach of the contract by the defendant.

The jury returned a verdict for the plaintiff in the sum of $4,116; and the defendant alleged exceptions.

The case was argued at the bar in January, 1912, before *Rugg*, C. J., *Morton, Hammond, Sheldon*, & *DeCourcy*, JJ., and afterwards was submitted on briefs to all the justices.

*M. Donald*, (*P. Ketchum* with him,) for the defendant.

*E. H. Warren* & *C. G. Lewis*, for the plaintiff, submitted a brief.

SHELDON, J. It is not material to determine whether the plaintiff could have enforced specifically against the defendant's gran-

tees her agreement to give him a new lease. However this might be, the defendant was personally liable upon her covenant, and her conveyance of the leased premises did not relieve her from that liability. *Riley* v. *Hale,* 158 Mass. 240. *Jones* v. *Parker,* 163 Mass. 564, 568. *Carpenter* v. *Pocasset Manuf. Co.* 180 Mass. 130, 133. See *Manning* v. *Fitch,* 138 Mass. 273; *Tufts* v. *Atlantic Telegraph Co.* 151 Mass. 269. The cases of *Hickey* v. *Railway Co.* 51 Ohio St. 40, and *Sexauer* v. *Wilson,* 136 Iowa, 357, relied on by the defendant, turned on what was regarded in those cases as the intention of the parties. We need not consider whether, upon similar facts, we should follow those decisions. No such intention appears in this case as was found there. It follows that the judge acted rightly in refusing the defendant's first, sixth and seventh requests for instructions, and in giving the plaintiff's first and second requests. And we find no error in the way in which the other requests bearing upon the issue of liability were dealt with.

Where a lessor has prevented the lessee from entering and occupying the leased premises, or where an owner of property has broken his agreement to give a lease thereof to a prospective tenant, the measure of damages in an action for this breach of contract, if no rent has been paid and if nothing further appears, is the difference between the actual value of the leasehold estate that should have been enjoyed and the agreed rental that was to have been paid therefor. *Jewett* v. *Brooks,* 134 Mass. 505. *Riley* v. *Hale,* 158 Mass. 240. *Dodds* v. *Hakes,* 114 N. Y. 260. *Giles* v. *O'Toole,* 4 Barb. 261. *Denison* v. *Ford,* 10 Daly, 412. *Cilley* v. *Hawkins,* 48 Ill. 308. This value, as in all cases in which the value of real estate or an interest therein is concerned, means the value for any and all uses to which the property is adapted and can readily be applied. If it is capable of being used in some particular way and has an enhanced value by reason of its availability for such use, the fact may be shown, and the value to be ascertained is the value thus enhanced; not because this is any other or greater value than the real market value of the property, but because it is the real value which is the subject of inquiry, and that value must depend much upon the nature of the property and its availability or adaptability for advantageous or profitable use. This rule generally has been applied where the value of property taken for a public use is to be determined, but it is not

limited to such cases. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35. *Maynard* v. *Northampton*, 157 Mass. 218. *Blaney* v. *Salem*, 160 Mass. 303. *Sargent* v. *Merrimac*, 196 Mass. 171, 178. The value of a leasehold estate, like that of any interest, is to be determined with reference to the use to which it can be most advantageously put. *Manning* v. *Fitch*, 138 Mass. 273. *Tufts* v. *Atlantic Telegraph Co.* 151 Mass. 269.

In this case both parties agreed that the property could best be used as a hotel for winter visitors, and that it was intended to be so used; and if that was so, the measure of damages was *prima facie* the value of the property for this use during the two years after June 1, 1910, over and above the rent which was to be paid therefor. That there might be some difficulty in fixing this value, or that its determination must be partly the result of an estimate rather than of an exact computation, does not affect the application of the rule. *Magnolia Metal Co.* v. *Gale*, 189 Mass. 124, 133. *Hunt* v. *Boston Elevated Railway*, 199 Mass. 220, 225. *Page* v. *Johnston*, 205 Mass. 274, 278. Putting the case in another way, the plaintiff has been prevented from making that use of the property which it was contemplated that he should make, and he is entitled to the damages which thus have been caused to him. *Townsend* v. *Nickerson Wharf Co.* 117 Mass. 501, 503. *Kostopolos* v. *Pezzetti*, 207 Mass. 277. *Snow* v. *Pulitzer*, 142 N. Y. 263. *Stewart* v. *Lanier House Co.* 75 Ga. 582.

Moreover, according to the evidence, both parties understood that the plaintiff did not expect to make any substantial profit during the first year, but did expect to do so during the next two years, and it was for this reason that the covenant for renewal was inserted. If so, the jury could give to him such prospective profits as it was fairly proved that he would have realized. This was the rule stated in *Hadley* v. *Baxendale*, 9 Exch. 341. And see *Jaques* v. *Millar*, 6 Ch. D. 153; *Dexter* v. *Manley*, 4 Cush. 14; *French* v. *Connecticut River Lumber Co.* 145 Mass. 261; *O'Brien* v. *Worcester*, 172 Mass. 348, 354; *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87; *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 446; *Hanson & Parker* v. *Wittenberg*, 205 Mass. 319, 327; *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21.

The *quantum* of such prospective profits was not so speculative or uncertain as to preclude their recovery. *Chaplin* v. *Hicks*,

[1911] 2 K. B. 786, 791, 795, 798. There was evidence of the actual receipts and expenditures during the time that the plaintiff was in possession. He testified as an expert to his opinion of what could be realized during the two following years ánd of the value of the leasehold estate in view thereof. Looking at the evidence of his knowledge and experience, we cannot say that this was wrong. The case comes well within the rule of *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, 556.

Doubtless it could not have been shown with absolute certainty that the plaintiff would have made any or what amount of profits. As in the case of almost any business, this would depend upon his ability to make a large number of other contracts of a more or less favorable character with other persons. A falling off in the number of visitors to Florida might turn an anticipated profit into a loss. All of his expectations might be disappointed from the happening of divers other contingencies. *Todd* v. *Keene,* 167 Mass. 157. *Fox* v. *Harding,* 7 Cush. 516, 522. But these considerations were of equal weight in many of the cases above cited, and are not decisive as matter of law, however they might have been regarded by the jury.

The defendant's twenty-first request was rightly refused. The offer of the Anthonys to the plaintiff to give him a new lease at a somewhat higher rent was made in April, 1910. The defendant was not bound to give a new lease to the plaintiff until June of that year. The plaintiff, in spite of the prophecy made to him of a breach of the defendant's agreement, had until the latter time a right still to expect that she would not allow her engagement to be violated, and was not bound to accept the earlier offer of the Anthonys for the sake of reducing the damages which otherwise he might claim. This was expressly decided in *Emory Manuf. Co.* v. *Salomon,* 178 Mass. 582. To the same effect see *Havemeyer* v. *Cunningham,* 35 Barb. 515.

The other exceptions need not be considered in detail. In the opinion of the majority of the court, none of them can be sustained.

*Exceptions overruled.*