EASTERN MASSACHUSETTS STREET RAILWAY COMPANY *vs.*
UNION STREET RAILWAY COMPANY.

Bristol.    October 28, 1929. — November 27, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* Construction, Performance and breach.  *Damages,* In contract,
Recoupment.  *Practice, Civil,* Recoupment.

A contract between two street railway companies provided for joint use of
their tracks and cars and of freight terminals owned by one of them.
The contract was for a term of five years or until terminated by either
party upon six months' notice to the other.  The second company
during the term gave notice of an intention to terminate the contract
six months later and forthwith terminated its freight business, ceasing
to operate any of its freight cars or to use the first company's
terminals.  The first company then had in its possession money pre-
viously collected under the contract for the benefit of the second
company.  In an action by the second company to recover that money,
the defendant sought to recoup the proportionate share of rentals
and other charges due from the plaintiff under the contract up to the
date set by the plaintiff for the termination thereof, the amount in
recoupment being equal to that claimed by the plaintiff.  The trial
judge ruled that the defendant was entitled to recoup and that the
plaintiff could not recover.  *Held,* that
    (1) The provisions of the contract meant that the plaintiff was
obliged to continue its freight business during the term of the con-
tract: an agreement to that effect might be implied since such con-
tinuance was essential to the carrying out of the terms of the contract;
    (2) The defendant was entitled to recoup damages for breach of
the contract by the plaintiff by reason of its discontinuance of its
freight business: such breach arose from the same agreement or trans-
action as the defendant's obligation to the plaintiff with regard to the
money which the plaintiff sought to recover;
    (3) The circumstance, that the breach by the plaintiff occurred sub-
sequently to the time when the defendant should have paid over the
money to the plaintiff, did not bar the defendant's right to recoup;
    (4) Evidence, as to the amount of freight handled in the months
immediately preceding the plaintiff's discontinuance of its freight
business and that the amount of freight handled by the defendant
diminished after such discontinuance, warranted findings that the
falling off in the defendant's business was due to such discontinuance
and that the amount of freight handled would have remained the same
if the plaintiff had not discontinued;.

(5) The circumstance, that the plaintiff might have reduced its freight business to a nominal amount without violating the contract, was not controlling: it must be assumed that the plaintiff would have acted in good faith and not interfered with the normal flow of freight;

(6) The rulings by the judge were correct.

CONTRACT, for money had and received. Writ dated January 12, 1926.

The action was heard in the Superior Court by *Walsh*, J., upon an agreed statement of facts and certain evidence. The defendant's answer, and material facts and evidence, are described in the opinion. The judge ruled that the defendant was entitled to recoup and that the plaintiff could not recover; and reported the action for determination by this court upon a stipulation that, if there were error in the rulings, judgment should be entered for the plaintiff in a certain sum; otherwise judgment should be entered for the defendant.

*A. E. Seagrave*, (*J. B. Kelley, Jr.*, with him,) for the plaintiff.

*T. F. O'Brien*, for the defendant.

SANDERSON, J. This is an action of contract to recover a sum alleged to be the balance due the plaintiff from the defendant under a written agreement dated March 8, 1920, relating to the handling of trolley freight over the lines of both companies, and to the use of freight terminals of the defendant in New Bedford and Fall River.

The defendant's answer as amended sets up as one defence that the agreement was to continue for five years from its date with the right of either party to terminate it by giving the other six months' notice; that the plaintiff on June 9, 1920, notified the defendant of its intention to terminate the contract on December 9, 1920, and of its decision to discontinue its freight business on June 18, 1920; that on the latter date the plaintiff ceased to operate any of its freight cars; and that after deducting from the amount collected by the defendant on the plaintiff's account, the proportionate share of the rentals and expense of the terminals to December 9, 1920, due from the plain-

tiff to the defendant, no balance of the plaintiff's money would remain in the hands of the defendant. The plaintiff demurred to this portion of the answer on the ground that it sets up a claim in the nature of recoupment, whereas the defendant's right, if any exists, should be by an action for breach of contract. The plaintiff appealed from an order overruling the demurrer.

The defendant owns two freight terminals, one in Fall River and one in New Bedford, with tracks incidental thereto. The main question on the merits is whether under the terms of the agreement the plaintiff was under an obligation to continue to use the terminals for a freight business until the contract came to an end. The scope of the agreement according to its terms was to arrange for the joint use by both in connection with the operation of their trolley freight business of parts of the railway of both companies and of the freight station terminals of the defendant. The first section of the agreement deals with the "Joint Use of Tracks and Freight Cars," the second with "Terminal Stations," and the third with "General Provisions," including those for monthly settlements, termination of contract, and for relief from or modification of liability if certain specified events should happen, but there is no provision for the voluntary giving up of its freight business by either party during the term of the contract.

The contract contained among other provisions those set out in the answer; and as therein stated notice was given to terminate the contract, and the plaintiff ceased to carry on a freight business on and after June 18, 1920.

Under the contract the defendant made collections of money for the benefit and account of the plaintiff for handling freight at the terminals during April, May and June, 1920, and paid over the same with the exception of the sum which the defendant now holds, and makes the contention that the plaintiff is accountable to it for an equivalent amount for charges from July to and including a part of December, 1920. The parties agreed that if the plaintiff is liable under its contract for that period and on the

basis therein set forth the amounts stated in the defendant's calculations of fixed charges are correct. The defendant was unable to make any profitable use of its freight terminals except for its own purposes for the period in question.

The defendant assumed the risk of the volume of the plaintiff's normal freight business but did not assume the risk of its voluntarily giving up that business. The contract contemplated joint use for five years of parts of the railway and freight terminals. The voluntary withdrawal of its freight business by the plaintiff precluded "the joint use by both companies in connection with the operation of their trolley freight business of . . . the freight station terminals," and must necessarily have caused an operation of cars on tracks on a schedule different from that upon which the companies had agreed without "an agreement in writing to such effect." It withdrew the assistance of the plaintiff's crew "in discharging . . . and loading the freight cars of both companies" at the terminals, took away the tonnage which was to be the basis stipulated in the contract for determining the plaintiff's share of the rent, and prevented the defendant from obtaining the data concerning the plaintiff's cars for which the contract provided. The provisions of the contract, when interpreted in the light of the circumstances and purpose to be accomplished, mean that the plaintiff was under an obligation to carry on a freight trolley business during its term and not voluntarily to stop the normal flow of that business. See *Tufts* v. *Atlantic Telegraph Co.* 151 Mass. 269, 271. The continuance of that business was essential to the carrying out of the terms of the contract and hence an agreement to that effect is implied. See *Proctor* v. *Union Coal Co.* 243 Mass. 428, 432.

In the part of the answer to which the demurrer relates the defendant seeks to have damages suffered by it because of the plaintiff's breach of the contract on which the action is based ascertained and applied in reduction of the plaintiff's claim. The implied obligation of the plaintiff not voluntarily to give up its freight business was a part of

the consideration of the contract, and did not relate to an independent and separate agreement or transaction, having no relation to the defendant's obligation to collect money and account to the plaintiff. The defendant was not obliged to resort to a separate action to have its damages ascertained, but had the right to prove such damages in reduction of the amount to which the plaintiff was entitled under the contract. *Harrington* v. *Stratton*, 22 Pick. 510, 517. *Stacy* v. *Kemp*, 97 Mass. 166. *Home Savings Bank* v. *Boston*, 131 Mass. 277, 280. *Bryne* v. *Dorey*, 221 Mass. 399, 406. *Barnett* v. *Loud*, 226 Mass. 447, 450. *Hooper* v. *Cuneo*, 227 Mass. 37, 39. *Wright* v. *Graustein*, 248 Mass. 205, 209. The fact, that the plaintiff's breach of contract occurred after the money collected by the defendant should have been paid to the plaintiff, did not deprive the defendant of the right to offset its damages for a later breach by way of recoupment. "This right of the defendant to claim damages for the non-performance of the contract existed at the making of the contract." *American Bridge Co. of New York* v. *Boston*, 202 Mass. 374, 376. The demurrer was properly overruled.

"The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts." *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21. The plaintiff cannot take advantage of its own breach of contract to avoid liability. To prove its damages the defendant offered evidence, subject to the plaintiff's exception, showing a substantial, but continuously diminishing, amount of freight handled during the term of the contract after the plaintiff gave up its freight business, while the cost of maintenance of the terminals during the same period was unchanged. It appeared in

cross-examination that while the plaintiff was engaged in a freight business freight was brought from all parts of its system so operating in Massachusetts. The parties agreed that the percentage of freight handled in the two terminals during May and June, 1920, while they were operating under the contract now being considered, was seventy per cent for the plaintiff and thirty per cent for the defendant. The judge could have found that the falling off in the defendant's business after June, 1920, was due to the fact that the plaintiff ceased to furnish any freight tonnage. He could have inferred that, if the plaintiff had continued to do a freight business, the percentage of tonnage for the months after June to the termination of the contract would not be less than it was in the two preceding months; the testimony as to the tonnage in these months, with the other evidence, furnished a sound basis of fact for such a finding. *Loughery* v. *Huxford*, 206 Mass. 324. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 380, 381. *Jacobs* v. *Cromwell*, 216 Mass. 182. *Barry* v. *New York Holding & Construction Co.* 226 Mass. 14, 18, 19. The contention that the freight business of the plaintiff might have decreased to a nominal amount without any violation of the contract by it is not a controlling consideration. It is to be assumed that the parties would carry out the contract in good faith and that during its life the plaintiff would do nothing to interfere with the normal flow of freight to the terminals. Upon the evidence the judge could have found that the loss to the defendant in rentals alone resulting from the plaintiff's breach of contract was enough to equal the amount of money withheld, and no prejudicial error appears in the ruling to the effect that the defendant was entitled to recover by way of recoupment that amount as its loss.

We cannot say that the method of computation used by the defendant was incorrect. Nor do we find prejudicial error in the rulings on evidence or other matters which have been argued. In accordance with the terms of the report judgment is to be entered for the defendant.

*So ordered.*