Dohoney, J.
This is an action for money damages by the plaintiff, Tele-Wire Supply Corp. (hereinafter Tele-Wire), for goods sold and delivered to the defendant, Wachusett Cablevision, Inc. (hereinafter, Wachusett). The plaintiffs complaint sought $16,208.26, plus interest and costs for wire strand and mounting hardware delivered to the defendant between March 9, 1982 and May 26, 1982.
The defendant, Wachusett, responded to the complaint by denying that the money was owed to the plaintiff. The defendant also filed a counterclaim alleging that the wire strand was defective, and demanding damages of $250,000.00.
Tele-Wire responded to the counterclaim by denying the allegation that the wire strand was defective.
After trial, the Court found for the plaintiff, Tele-Wire in the amount of . $16,208.86, and for Wachusett, the defendant/plaintiff in counterclaim, in the amount of $39,484.92. The court awarded damages to Wachusett, the defendant/plaintiff in counterclaim, in the amount of $23,276.06. Tele-Wire claimed a Report.
Tele-Wire asserts two basic issues: first, that there was insufficient evidence of a breach of contract, and, secondly, that there was insufficient evidence of damages.
As to the breach of contract, it is undisputed that the coating on the wire was peeling off the wire and building up as the wire was pulled through the clamps. There were three reasons assigned for this problem: 1.) excessive galvanizing of the wire, 2.) the wire being pulled too fast, or 3.) the clamps being too tight. The Report reflects evidence on both sides of this issue. There was evidence that the quality of wire strand in the wire industry is measured by the American Society for Testing and Materials and that this particular wire strand is measured against ASTM Specification A-475; that the allegedly defective wire was tested and found to exceed this specification. There was *31 also evidence that comparisons were made of wire which was allegedly defective and wire for which no claim was made and that the zinc coating on the allegedly defective wire was greater than on the other wire; and that there was a greater tendency to peel due to the thickness of the zinc and its softness.
The trial judge did in fact find that “the cause of the flaking and caking was due to defects in the zinc coating on steel wire.” This finding is permissible based upon the evidence.
The judge apparently relied on the fact that the replacement wire did not flake or cake and on tests which revealed thicker coating on the subject wire. He was not required to accept the findings of the testing laboratory and his findings of fact reveal that he did not do so. See Dodge v. Sawyer, 288 Mass. 402(1934). Our standard of review prevents us from reviewing questions of fact found by the trial justice where such findings are supported on any reasonable view of the evidence including all rational inferences of which it was susceptible. T.L. Edwards, Inc. v. Fields, 57 Mass. App. Dec. 22(1975), affirmed 371 Mass. 895(1976); Lawton v. Dracousis, 14 Mass. App. Ct. 164(1982), further appellate review denied 387 Mass. 1103. Our function has been most recently stated in Ed Herrington, Inc. v. Clark, 1985 Mass. App. Div. 18 as follows:
This tribunal’s sole task is to determine whether on the evidence with all rational inferences to be drawn therefrom, the Trial Court’s findings can be sustained. Barttro v. Watertown Square Theater, Inc., 309 Mass. 223, 224(1941). If the record reveals there be any evidence to support the findings, they thereby become conclusive and cannot be disturbed. Heil v. McCann, 360 Mass. 507(1971); Moss v. Old Colony Trust Company, 246 Mass. 139, 143-144(1923).
Thus we cannot ascribe to Tele-Wire’s contention that there was insufficient evidence of a breach of contract.
The second issue concerns the determination of the damages. Tele-Wire asserts that the issue of lost profits was simply conjecture and surmise especially in view of the fact that Wachusett was just beginning operations and further asserts that there was no basis for the conclusion that the wire would last only fifteen years.
As to the issue of the damages, the Report reflects evidence that the . completion of the system was delayed for one month, that this delay was partly due to the problems with the wire, and that the total profit for one month was approximately $20,000.00. The judge found the delay attributable to the wire to be fourteen (14) days and allocated damages of $9,338.00 due to this delay. The Report also reflects evidence of expert testimony that the wire would only last twelve to fifteen years and that the normal life span should be twenty years. There was also testimony that the cost to replace the wire would be $5,800.00 per mile and that there was 20.83 miles involved. The judge found that the life span would be fifteen years and the cost of replacing the cable would be $120,584.00. He allocated damages in this area to be $30,146.00.
The role of the trial judge in assessing damages has recently been discussed by the Supreme Judicial Court in Delano Growers’ Cooperative Winery v. Supreme Wine Co., Inc., 393 Mass. 666, 679(1985). There the general rule was stated as follows:
In construing Supreme’s incidental and consequential damages, we note that remedies under the Uniform Commercial Code are to be administered liberally so as to put the aggrieved party in as good a position as if the other party had fully performed. G.L. c. 106, §1-106. Productora e Importadora de Papel, S.A. de C.V. v. Fleming, 376 *32 Mass. 826, 838; 383 N.E.2d 1129 (1978). The consequential damages include any loss of prospective profits, Matsushita Elec. Corp. of America v. Sonus Corp., 362 Mass. 246, 264; 284 N.E.2d 880(1972), and incidental damages permit recovery of Supreme’s reasonable expenses incurred in handling the defective goods. G.L. c. 106 § 2-715. See Uniform Commercial Code §2-715, comment 1 1A U.L.A. 446(1976); J. White & R. Summers, Uniform Commercial Code § 10-3 (2d ed. 1980). See also Bevel-Fold, Inc. v. Bose Corp., 9 Mass. App. Ct. 576, 584; 402 N.E. 2d 1104 (1980). Consequential damages are those that cannot be reasonably prevented and arise naturally from the breach, or which are reasonably contemplated by the parties. G.L. c. 106, §2-715. See J. White & R. Summers, supra at § 10-4. Calculation of damages, however, must not overcompensate the buyer. Id.
Damages do not have to be proved with mathematical certainty. See Frank D. Wayne Associates, Inc. v. Lussier, 16 Mass. App. Ct. 986(1983); Dyecraftsman, Inc. v. Feinberg, 359 Mass. 485(1971).
As to the lost profits, Tele-Wire correctly states that they must not be left to conjecture or speculation and that damages for a new enterprise are especially s uspect. The RESTATEMENT OF CONTRACTS, SECOND, SECTION 352 states the rule as follows:
Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.
The COMMENT TO THE RESTATEMENT gives further assistance by stating:
b. Proof of profits. The difficulty of proving lost profits varies greatly with the nature of the transaction. If, for example, it is the seller who claims lost profit on the ground that the buyer’s breach has caused him to lose a sale, proof of lost profit will ordinarily not be difficult. If, however, it is the buyer who claims lost profit on the ground that the seller’s breach has caused him loss in other transactions, the task of proof is harder. Furthermore, if the transaction is more complex and extends into the future, as where the seller agrees to furnish all of the buyer’s requirements over a period of years, proof of the loss of the profits caused by the seller’s breach is more difficult. If the breach prevents the injured party from carrying on a well-established business, the resulting loss of profits can often be proved with sufficient certainty. Evidence of past performance will form the basis for a reasonable prediction as to the future. See Illustration 5. However, if the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs of prices, proof will be more difficult. Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and. the like. See Illustration 6. Under a contract of exclusive agency for the sale of goods on commission, the agent can often prove with sufficient certainty the profits that he would have made had he not been discharged. Proof of the sales made by the agent in the agreed territory before the breach, or of the sales made there by the principal after the breach, may permit a reasonable accurate estimate of the agent’s loss of commissions. However, if the agency is not an exclusive one, so that the agent’s ability to withstand competition is in question, such ashowing will be more difficult, although the agent’s past record may give a *33 sufficient basis forjudging this. See Illustration?.
This issue has been discussed in Massachusetts in McDonald v. Hawker, 11 Mass. App. Ct. 896(1981). The court felt that the testimony concerning the possible sale of two lots and the resulting profit amounted to “conjecture, surmise, or hypothesis” and indicated damages were not appropriate. See also Peabody Construction Co., Inc. v. First Federal Parking Corp., 3 Mass. App. Ct. 768(1975); McCauley v. Sons Pharmacy, Inc., 3 Mass. App. Ct. 774(1975). However, in Rambola v. Cosindas, 351 Mass. 382(1969), thecourt felt that lost profits could be shown for the future winnings of a race horse by the use of his past performance. The court recognized that each case must be decided on its own facts and that variant results might be reached. The Court also recognized the possibility that no profits would be realized but felt the past performance record to be such that recovery was possible. However, past profits are not essential to proving damages. See Neal v. Jefferson, 212 Mass. 517(1912).
The courts have also recognized the basis for damages to be expert testimony. City Welding and Manufacturing Co. v. Gidley-Eschenheimer Corp., 16 Mass. App. Ct. 372(1983). While the justice in our situation was dealing with a new enterprise, he had the benefit of the testimony of the manager of Wachusett and the benefit of the history of the operation after commencement. Our case is to be distinguished from an enterprise which never opened and seeks lost profit.The nature of the cable television business would seem to lend itself to a rather precise computation of monthly revenues based upon its experience when it did begin operations at about the same time. In any event, it seems at least as precise as the future winnings of a race horse and is consistent with the Comment to Restatement that it is established with reasonable certainty.
As to the judge’s conclusion that the wire would last only fifteen years, there was precise testimony to this effect as reflected in the Report. Thus, we cannot disturb the finding of the trial justice.
See Ed Herrington, Inc. v. Clark, supra.
Although this decision is not primarily based upon this failure, we note that there were no requests for rulings which bear on the matters before us. The procedural posture of this case made the filing of requests especially cumbersome. Tele-Wire did file requests to support its case in chief. These were allowed by the trial justice and in fact Tele-Wire recovered on its case in chief. As to the counterclaim of Wachusett, there were no requests for rulings which were timely filed. While it is of course difficult to prepare rulings in advance to address the issues raised by a counterclaim it is still necessary to have requests for rulings to preserve an appellate issue. Bernard J. Basch & Sons v. Travelers Indemnity Company, 392 Mass. 1002(1984), Worcester County National Bank v. Brogna, 386 Mass. 1002(1982).
Therefore, there being no procedural error, the Report is hereby dismissed.