PAUL ROMBOLA *vs.* PETER COSINDAS.

Norfolk.   October 6, 1966. — November 7, 1966.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Contract,* Performance and breach, Contract for racing of a horse.   *Damages,* For breach of contract, Nominal damages, Loss of prospective profits.   *Practice, Civil,* Ordering verdict.

In an action of contract against the owner of a race horse, statements in the plaintiff's opening that by the terms of a written contract between the parties the plaintiff agreed to train, maintain and race the horse for a stated period in return for a certain per cent of all gross purses, that he took possession of the horse and trained, maintained and raced her and finally entered her in six scheduled stake races in a meet closing at the expiration date of the contract period, that the horse had been accepted as a participant for such races and transported to the site of that meet, and that without the plaintiff's knowledge or consent the defendant took possession of the horse before that meet started and the horse did not race again during the contract period, set forth a cause of action entitling the plaintiff to at least nominal damages, so that it was error to direct a verdict for the defendant; and further statements in the plaintiff's opening respecting the horse's earnings record before and after that meet and the plaintiff's qualifications as an expert entitled him to ascertainment of substantial damages for the loss of prospective profits from the scheduled stake races.

CONTRACT.   Writ in the District Court of East Norfolk dated December 6, 1963.

---

Rombola *v.* Cosindas.

Upon removal to the Superior Court the action was tried before *Ford,* J.

*John J. C. Herlihy* (*Frank E. Rowbotham* with him) for the plaintiff.

*Anthony G. Muello* for the defendant.

KIRK, J.  The sole question presented by the bill of exceptions of the plaintiff (Rombola) in this action of contract is whether the judge committed error in directing a verdict for the defendant (Cosindas) on the plaintiff's opening statement to the jury.

We state the substance of the plaintiff's case, as outlined in the opening statement.  By the terms of a written contract with Cosindas, Rombola agreed to train, maintain and race Cosindas's horses, Margy Sampson and Margy Star, for the period November 8, 1962, to December 1, 1963. The present action relates only to the horse Margy Sampson.  Rombola was to assume all expenses and to receive seventy-five per cent of all gross purses; Cosindas was to receive the remaining twenty-five per cent.  Rombola took possession of Margy Sampson and, because there was no winter racing in the area, maintained and trained her at his stable throughout the winter.  In the spring and summer of 1963, Rombola entered the horse in a total of twenty-five races, run at four racing meets which were held at three different racetracks.  In the fall, Rombola entered Margy Sampson in six stake races in a thirty-three day meet to be held at Suffolk Downs.  The expiration date of Rombola's contract coincided with the closing date of the meet.  In stake races, horses run against others in their own class. Horses are classified or rated according to the amount of money they have won.  Margy Sampson had already raced against several of the horses who were entered in the six stake races scheduled for the Suffolk Downs meet.  On October 25, 1963, before the meet started, Cosindas, without Rombola's knowledge or consent, took possession of the horse at Suffolk Downs and thereby deprived Rombola of his right to race the horse.  The horse did not race between October 25 and December 1, 1963.

On the issue of damages Rombola would show that generally, in a stake race, there are eight or nine starters and that the purse is shared by the first five finishers at diminishing percentages. The purse is determined before the race and is not affected by the amount of money wagered by patrons at the track. In the year preceding the contract, Margy Sampson as a three-year old had won a total of approximately $400–$450 in four races. In the year of the contract, of the twenty-five races in which the horse was entered by Rombola, she had won ten and shared in the purse money in a total of twenty races, earning, in all, purses approximating $12,000. In the year following the expiration of Rombola's contract with Cosindas, the horse raced twenty-nine times and won money in an amount almost completely consistent percentagewise with the money won during the period of the contract. A person who is in the business of racing horses is able, on the basis of a horse's past earnings record, to approximate its future earnings. Rombola, who has trained, raced and owned trotting horses as a means of livelihood for eight years, is an expert in this field and had an opinion as to how much the horse would have won in the six stake races.

Treating, as we must, all of the statements in the opening as facts, and construing them, as we must, in the light most favorable to the plaintiff, *Douglas* v. *Whittaker,* 324 Mass. 398, 399–400, *Singarella* v. *Boston,* 342 Mass. 385, 386, it is clear that the essentials of an action of contract have been set out. The opening statement reveals that (1) there was a written agreement supported by valid consideration, (2) the plaintiff was ready, willing and able to perform, and (3) the defendant's breach has prevented the plaintiff from performing. The breach, once established, entitled the plaintiff to at least nominal damages in an action at law, *King Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co. Inc.* 317 Mass. 652, 655, regardless of his ability to prove substantial damages. *Hagan* v. *Riley,* 13 Gray, 515. *Damiano* v. *National Grange Mut. Liab. Co.* 316 Mass. 626, 629, and cases cited. It was error, therefore, to direct a verdict for

the defendant. See *Lane* v. *Epinard,* 318 Mass. 664, 667; *Newton Constr. Co.* v. *West & South Water Supply Dist. of Acton,* 326 Mass. 171, 175; *Nathan* v. *Tremont Storage Warehouse, Inc.* 328 Mass. 168.

We think further that Rombola would be entitled to show substantial damages on the theory of loss of prospective profits. *Dennis* v. *Maxfield,* 10 Allen, 138. *Galvin* v. *Nutting-Pillman Amusement Co.* 284 Mass. 314, 315, and cases cited. Compare *Air Technology Corp.* v. *General Elec. Co.* 347 Mass. 613, 627, where damages were discussed on the theory of a lost business opportunity. See Restatement: Contracts, §§ 331–332; Williston, Contracts (2d ed.) §§ 1346–1346A; Corbin, Contracts, § 1030. The right to recover prospective damages must in each case be decided on its own facts, and a comparatively insignificant factor, in combination with others, may lead to a conclusion in one decision apparently at variance with that reached in others. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 22. In determining the amount of damages to be awarded, mathematical accuracy of proof is not required. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 380. *Hawkins* v. *Jamrog,* 277 Mass. 540, 544. The likelihood of prospective profits may be proved by an established earnings record. See *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547; *Galvin* v. *Nutting-Pillman Amusement Co.* 284 Mass. 314; *Food Specialties, Inc.* v. *John C. Dowd, Inc.* 339 Mass. 735, 747–748. Expert opinion may be introduced to substantiate the amount of prospective profits. *Neal* v. *Jefferson,* 212 Mass. 517, 524. See *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, 35.

We apply these principles to the present case. It appears that Margy Sampson had already been accepted as a participant in the stake races and transported to the site of the meet. She had already proved her ability both prior to and while under Rombola's management and training, over an extended period of time, against many competitors and under varying track conditions. Her consistent performance in the year subsequent to the breach negates any basis

for an inference of a diminution in ability or in earning capacity at the time of the Suffolk Downs meet. While it is possible that no profits would have been realized if Margy Sampson had participated in the scheduled stake races, that possibility is inherent in any business venture. It is not sufficient to foreclose Rombola's right to prove prospective profits. *Dennis* v. *Maxfield,* 10 Allen, 138, 142. *Neal* v. *Jefferson,* 212 Mass. 517, 524. Her earnings record, while not conclusive, is admissible as evidence of the extent of damages caused by the breach. *Loughery* v. *Huxford,* 206 Mass. 324. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, 556. *Jacobs* v. *Cromwell,* 216 Mass. 182. Rombola's opinion would also be admissible as evidence of the extent of damages if his qualifications as an expert witness are accepted by the trial judge. *Neal* v. *Jefferson,* 212 Mass. 517, 524.

Rombola was entitled to proceed to a trial of the issues.

*Exceptions sustained.*