*Western District*

No. 119

## MURIEL SATLAWA

v.

## NEW ENGLAND TELEPHONE AND TELEGRAPH CO.

Argued: Apr. 29, 1974 - Decided: May 6, 1974

*Present:* Dudley, P.J., Sloan, Larkin, JJ.

Case tried to *Ryan, J.* in the District Court of Hampshire. No. 14333 R.A.

**Dudley, P.J.** This is an action of contract and tort, which was remanded to the District Court of Hampshire for trial.

The plaintiff, a real estate broker, seeks to recover damages allegedly resulting from an error in an advertisement placed by the plaintiff for listing in the Yellow Pages of the defendant's 1972 telephone book for the Holyoke area.

The declaration is in two Counts: the *first* sounding in tort and alleging that the error in the advertisement was due to the defendant's negligence resulting in damage to the plaintiff by way of loss of income and loss of contact with the public; and the *second* sound-

ing in contract and elleging essentially the same damage as set forth in the first count.

The answer is general denial, payment, contributory negligence and limitation of liability under the terms of a written contract between the parties.

The trial justice entered a finding for the plaintiff in the sum of $8,000.00 on each count, indicating that each count arose out of the same cause of action.

The defendant seasonably filed six requests for rulings, one of which (#5) was waived in open court.

The court made no specific findings of facts.

Defendant, aggrieved by the court's denial of its requests numbered 3, 4 and 6, appeals.

These requests are, as follows:—

3. As a matter of law, the evidence does not warrant a finding that defendant's breach, if any, was the natural, direct and proximate cause of plaintiff's damages, if any.

4. As a matter of law, the evidence requires a finding for the defendant because plaintiff's damages, if any, are based on uncertainty, contingency and speculation.

6. As a matter of law, even if defendant breached its contract with the plaintiff, the measure of damages for said breach is controlled by the terms of the written contract between plaintiff and defendant.

At the trial there was evidence tending to show that:

The plaintiff has been in the real estate business since 1959 and has owned and operated her own real estate business since 1962. She has been advertising in the Yellow Pages of defendant's telephone directory since 1962. Her place of business is at 1159 Dwight Street, Holyoke. (The report does not indicate where the plaintiff maintains her residence.) In 1971, the plaintiff ordered an advertisement to appear in the Yellow Pages of the defendant's 1972 directory and paid $330.00 for the ad to appear during the twelve month life of the directory for the year 1972. The order was in writing, and was read, approved and signed by her. She received a copy.

On the reverse of the contract, under "Terms and Conditions" the following language appears:—

> "The applicant agrees that the Company shall not be liable for errors or omissions (including total omissions) in such directory' service beyond the amount paid for the item or items in which errors and omissions occur for the issue life of the directory involved." .....
> 'Ther is no agreement between parties in addition to or otherwise than herein stated. This application contains the whole agreement."

Before the advertisement was published a proof of the proposed ad was sent to the plaintiff by the defendant with instructions that if the proof was correct, plaintiff need do nothing further. Plaintiff found the proof to be correct and did nothing further.

The report does not indicate whether or not the plaintiff actually examined the proof which was sent to her.

When the 1972 directory was published it appeared on page 124 with the advertisements and names of approximately twenty-eight other real estate brokers.

The advertisement, as contracted, by the plaintiff called for the advertisement to read among other things, "Res. 464-7922". The advertisement, as published, read "Res. 464-7927". The advertisement in all other respects was correct and in addition to plaintiff's residence number also contained two other telephone numbers for business office.

It is interesting to note, though not necessarily significant, that of all the realtor's advertisements on the [vital] page, only one other includes the residence phone designated as such, though some numbers listed may in fact have been residence phones.

In the year 1970, plaintiff employed three full-time employees, and she was personally responsible for the sale of twenty properties for which she received commissions totalling $19,809.42. In the year 1971, she employed

three full-time employees, and personally sold nineteen properties for which she received commissions totalling $19,715.00; in the year 1972, the year in which the directory error appeared she employed four full-time employees, and personally sold eleven properties for which she received commissions totalling $11,719.00. She further testified that if one of her employees sold a listing of plaintiff's, the employee was entitled to fifty-percent of the commission and plaintiff received the other fifty-percent, and that any expenses involved were deducted from plaintiff's share of the commission; and testified that she spent more time at her business in the year 1972 than she had in 1971 and that she kept her business open until 9:00 P.M.

Plaintiff testified that her sales had increased each year since she began business in 1962, except for one year due to economic conditions, and except in the year 1972.

In the year 1971, plaintiff maintained office hours at her Dwight Street, Holyoke place of business from 9:00 A.M. to 5:00 P.M. daily. Thereafter, she received an average of six business calls per evening at her home for a weekly average of thirty-six calls.

In 1972, she, or someone in her behalf, was required to remain at her place of business on Dwight Street from 9:00 A.M. to 9:00 P.M. daily because of the erroneous listing of her residence telephone number in the Yellow Pages of the 1972 directory.

Of the average of thirty-six business calls which plaintiff received at her home in the evening during the year 1971, many were from customers with whom she had had prior contact at her Dwight Street business office. In 1972 she was not getting phone calls at her home.

After the 1972 directory error came to plaintiff's attention, she would inform those with whom she would come into contact for business purposes that there was an error in the listing of her residential number in the Yellow Page portion of the 1972 directory, and she would advise such persons of her correct number in the event that they desired to contact her at her home.

Plaintiff also advertised in a local newspaper during the year 1972, but these advertisements did not list her residential telephone number. She testified that exposure was very, very important in the real estate business, such as advertisements in the Yellow Pages, that the newspaper changes every day but that sellers of real estate are more inclined to consult the Yellow Pages.

Plaintiff is, and was in the year 1972, a member of the Multiple Listing Service organization in her area. This is an organition of real estate brokers who exchange information among themselves concerning properties listed for sale and customers seeking to purchase properties. When a member of the organiza-

tion, other than the one with whom the prospective seller or buyer made the initial contact, i.e. the listing broker, is able to effect a sale or purchase, the commission received on said sale or purchase is shared on an agreed upon percentage basis between the listing broker and the one who effected the transaction. Plaintiff notified all members of the Multiple Listing Service organization to which she belonged of the erroneous listing of her residence telephone number in the Yellow Page portion of the telephone directory for the year 1972, and also provided these members with her correct residence telephone number.

The essential facts in this case do not appear to be in dispute except on the question of damages.

Though the trial justice made no specific findings of fact, it is apparent from the report that he found the defendant negligent in its duty, in failing to correctly print the residence telephone number of the plaintiff in the Yellow Pages of its 1972 directory. There was no evidence of negligence beyond the fact of the error in printing.

The defendant admits the error in printing the wrong number but alleges contributory negligence on the part of the plaintiff in failing to notice the error in the proof of the advertisement which was submitted to the plaintiff for approval or correction, if in fact there was an error in the proof, and in

failing to call the error to the attention of the defendant as requested by the defendant. The report states that the plaintiff found the proof to be correct, in which event the error was not committed by the defendant but by the printer. If the error was due to the negligence of the printer, the defendant could conceivably be held liable on the basis of "respondeat superior". However, without some evidence beyond the mere error in printing, there is not sufficient evidence to establish negligence or a sufficient degree of negligence to hold the defendant liable.

The majority of authorities are in accord that ordinary negligence is not sufficient to overcome a telephone directory advertising contract limitation of liability. See *Robinson* v. *Southwestern Bell*, 366 Fed. Supp. 307 (1973) and cases cited.

Fourteen states, where the question has been decided, including, among others, New York, California, Maryland, Vermont, Tennessee, Florida, Missouri, Ohio and others support this rule.

Because of our treatment of the action of the court below on requests number four and six, it is not necessary to deal with request number three.

In the denial of requests number four and six the court below committed prejudicial error.

Since the report states that all of the evidence material to the issue is set forth therein, we must assume that to be true.

The plaintiff's claim of substantial damages is based on an alleged loss of contract with prospective customers by reason of the error in publishing an incorrect number for her residence phone, with corresponding loss of prospective profits.

 A request for ruling, predicated upon the sufficiency of the evidence to warrant a finding which is decisive of an issue in the case is a "proper", "pertinent", or "relevant" request for a ruling of law, and must be passed on by the trial justice. The denial of such request, or the failure to act upon it which is treated as a denial, raises a question of law. *Bresnick* v. *Heath,* 292 Mass. 293. *Hurley* v. *Ornstein,* 311 Mass. 477, 480. *Stella* v. *Curtis,* 348 Mass. 458, 461.

 The findings of subsidiary fact by the trial justice brings before the Appellate Division the question of law whether or not the evidence warranted the ultimate finding. *Sullivan* v. *Aussebel,* 39 Mass. App. Dec. 222, 227.

 Although a finding of fact is not a proper subject of a report, the issue whether a general or ultimate finding based on subsidiary facts is either warranted or required by those facts raises a question of law which may be reported. *Sontier* v. *Kaplow,* 330 Mass.

448, 450. *Leschevsky* v. *American Employers,* 293 Mass. 164, 167.

It is rarely that a finding of negligence as a fact can be required as a matter of right. Commonly it must be determined as a matter of fact upon a consideration of all of the evidence. *McDonough* v. *Metropolitan Life,* 228 Mass. 450, 452. *Castano* v. *Leone,* 278 Mass. 429 and cases cited.

Findings of fact are not reviewable on appeal. The appeal brings before the Appellate Division for review only the rulings of law made by the trial justice and reported by him to the Appellate Division. *Ahern* v. *Towle,* 310 Mass. 695, 701 and cases cited. However, insofar as the findings of fact involve rulings of law on the evidence, they may be reviewed. *Schon* v. *Odd Fellows Building Assoc.,* 255 Mass. 465, 467.

The general and special findings of the trial justice in an action at law are to stand if warranted in law upon any possible view of the evidence. The question for us to decide is whether, upon the evidence, with all rational inferences to be drawn therefrom, the findings can be sustained. *Moss* v. *Old Colony Trust Co.,* 246 Mass. 139, 143 and cases cited.

The findings as to damages and the finding on the tort count cannot be sustained. We realize that the plaintiff would be entitled to show substantial damages on the theory of loss of prospective profits. *Dennis* v. *Maxfield,*

10 Allen 138. *Rombola* v. *Cosindas,* 351 Mass. 382, 385 and cases cited. *Air Technology* v. *General Electric,* 347 Mass. 613, 627.

The right to recover prospective damages must in each case be decided on the basis of its own facts and a comparatively insignificant factor, in combination with others, may lead to a conclusion in one case apparently at variance with that reached in others. *Hetherington* v, *Firth,* 210 Mass. 8, 22. *Rombola* v. *Cosindas,* 351 Mass. 382.

In determining the amount of damages to be awarded, mathematical accuracy of proof is not required. *Randall* v. *Peerless Motor,* 212 Mass. 352, 380. *Hawkins* v. *Jamrog,* 277 Mass. 540, 544. *Rombola* v. *Cosindas,* 351 Mass. 382.

The liklihood of prospective profits may be proved by an established earnings record. *Gagnon* v. *Sperry,* 206 Mass. 547. *Food Specialties* v. *Dowd,* 339 Mass. 735, 747, 748. Earnings records, while not conclusive, are admissible as evidence of the extent of damages caused by the breach. *Loughery* v. *Huxford,* 206 Mass. 547. *Gagnon* v. *Sperry,* 206 Mass. 547, 556. *Jacobs* v. *Cromwell,* 216 Mass. 182. However, when damages are sought they must be proved and not left to speculation. The complaining party must establish his claim upon a solid foundation in fact and cannot recover when any essential element is left to conjecture, surmise or hypothesis.

*Hetherington* v. *Firth,* 210 Mass. 8, 22. *Snelling* v. *Wall,* 345 Mass. 634, 636. The evidence reported leaves the measure of damages open to conjecture, surmise and speculation and does not warrant the assessment made in the court below. For example, the claim of substantial damages, according to the reported evidence, is based on the omission of the residence number of the plaintiff from the advertisement, resulting in the plaintiff not receiving evening phone calls at her residence. However, the evidence discloses that customarily some of her evening home calls and sales come from parties contacted at her business office and some from members of the Multiple Listing Service — all of whom, according to the reported evidence, were aware of the error in advertising and were acquainted with her correct phone number. Notwithstanding their acquaintance with the error and the correct residence number, the evidence would indicate that she received no evening phone calls in 1972 either from office customers or from Multiple Listing Members.

Further, we are unable to determine from the evidence, how many sales made in the years used for comparison originated from evening calls made to the plaintiff at her home, nor are we able to determine whether the claimed losses in commission constituted a loss of prospective gross or net profits.

Accordingly, there was prejudicial error in the denial of request for ruling number four because damages were left to speculation and conjectire.

As to request for ruling number six there was prejudicial error in its denial. The contract between the parties limited the liability of the defendant to the amount paid for the advertisement.

The parties are bound by the plain terms of their contract unless the contract is unconscionable. *Gaston* v. *Gordon,* 208 Mass. 265, 269.

Where the terms of a contract are openly and fairly arrived at, enforcement will not be denied because of hardship to one of the parties. *Hiller* v. *Submarine Signal Company,* 325 Mass. 546, 550 and cases cited.

Advertising in the Yellow Pages of a telephone directory has commonly been looked upon as a private relationship between the telephone Company and the advertiser and the majority of courts have held that liability for error or omission in an advertisement can be limited by contract. See Annotation and many cases cited in 92 Amer. Law Reports, 2nd 913 thru 946. See also, *Ellis* v. *Am. Telegraph Co.,* 13 Allen, 226, 234, 235. *Pollock* v. *N.E. Tel. & Tel. Co.,* 289 Mass. 255, 259, 260, 261. *Wilkinson* v. *N.E. Tel. & Tel. Co.,* 327 Mass. 132, 135, 136. *Robinson* v. *Southwestern Bell Tel. Co.,* 366 Fed. Supp. 307 (1973) and cases cited.

The plaintiff argues in substance that the limitation of liability is unconscionable and therefore under the provisions of the Uniform Commercial Code should not be enforced but, in the light of the cases cited above and based upon the evidence reported, the limitation of liability in this case was not unreasonable and should be enforced.

The denial of request for ruling as to the tort count was prejudicial to the defendant because the evidence as to negligence and as to damage was conjectural and speculative.

The defendant should have specified to which count the requests applied. However, if request #4 was to be applied to the count for breach of contract the denial would have been correct.

There was error in the denial of request for ruling number six. There was error in the printing of the advertisement contracted for and by the terms of the contract, in this event the defendant became liable to the extent of the amount which had been paid for the advertisement. The amount paid was $330.00.

Since there was prejudicial error in the assessment of damages and since under Rule #34 of the District Courts, the Appellate Division has authority to reverse, vacate or modify the judgment of the court below, we vacate the finding on the tort count on the basis of lack of proof of amount of damage and insufficient evidence to support a finding

of negligence and we order judgment for the defendant on that count.

On the contract count we modify the amount of damages assessed and assess the damages against the defendant in the sum of $330.00 as provided in the contract between the parties.

N.B. Judge Larkin dissents without Opinion.

BEGLEY, FERRITER & BRADY

for Plaintiff

BOWDITCH, GOWETZ, LANE & LEDOUX

for Defendant