**Eino KEERD**
**vs.**
**Robert D. USEN & Virginia A. USEN**
**and**
**POST ROAD REALTY, INC.**
**vs.**
**Robert D. USEN & Virginia A. USEN**

**No. 8741**

Appellate Division of the
District Court Department
Northern District
Commonwealth of Massachusetts

**October 27, 1982**

Philip L. Cohen, Esq., counsel for plaintiff.
Frederic A. Crafts, Jr., Esq., counsel for defendant.

## OPINION

Cowdrey, P.J. This is an appeal of two separate actions, which were consolidated for trial, for breach of contract against defendants Robert D. Usen and Virginia A. Usen.

Plaintiff Eino Keerd's (hereinafter "the plaintiff") complaint alleges that the defendants' breached an agreement for the purchase and sale of the defendants' real estate. Counts two and three of the plaintiff's complaint seeks recovery of a $2,000 deposit paid to the defendants by the plaintiff and held in escrow by Post Road Realty, Inc. Count one of the plaintiff's complaint seek damages for the plaintiff's lost profits. The second action against the defendants was instituted by Post Road Realty, Inc. (hereinafter "Post Road") to recover a real estate broker's commission pursuant to the purchase and sale agreement entered into by the plaintiff and defendants.

The reported evidence may be summarized as follows: On March 28, 1980 the plaintiff and defendants executed a written agreement for the purchase and sale of a vacant lot in Weston, Massachusetts which was owned by the defendants and adjacent to the defendants' place of residence. Post Road, a licensed real estate broker, also signed the agreement as a party thereto. The contract specified a purchase price of $73,500.00 and a closing date of May 15, 1980.

The report states that the defendants understood that the plaintiff was a builder whose express purpose in purchasing the vacant lot was to construct a four-bedroom, single-family dwelling and to sell the real estate, as developed, for profit. The plaintiff had developed a number of lots in similar fashion in Weston, Massachusetts. The plaintiff testified at trial, however, that he might have utilized the lot to construct a personal residence for himself.

Paragraphs 29A and B of the parties' agreement provided:

"A. **The buyer shall use best efforts to obtain,** and shall pay for all necessary percolation or other tests necessary for obtaining, **a permit to install a septic system** on the premises capable of servicing a four-bedroom home.
"B. **If such tests and permit** for the septic system, as provided for in Paragraph A above, **have not been obtained on or before April 30, 1980, buyer, at its sole option, may terminate this Agreement** by written notice to seller on or before April 30, 1980 and buyer's deposit shall be refunded

thereupon by seller to buyer, without further obligation between the parties. (emphasis supplied)."

The termination deadline of April 30, 1980 was later extended to May 2, 1980 upon an oral agreement of the parties on April 26, 1980. Paragraph 19 of the purchase and sale agreement stated:

"**A broker's fee** for professional services of $5,445.00 **is due** from the seller to Post Road Realty, Inc. **if, as and when the deed is delivered** and shall be paid 50% at closing and 50% at the earlier of the pay off of the $36,750.00 note by Eino Keerd or two years from the date of this closing . . . (emphasis supplied)."

Prior to the contract's execution, defendant Robert D. Usen provided the plaintiff with the results of previously conducted percolation tests performed on the property, and suggested that the plaintiff test in those areas. Beginning April 2, 1980, the plaintiff proceeded to test in both the suggested areas and other sections of the lot. Fifteen "deep holes" were dug and six percolation tests were performed. The Director of the Weston Board of Health was present to witness the tests. On April 9, 1980 a topographic survey of the land was prepared. Septic system plans were prepared by the plaintiff between April 14 and April 23, 1980, and were ultimately submitted to the Board of Health on April 25, 1980.

The report is devoid of evidence that these plans were actually rejected or judged unacceptable by the Board of Health. The report merely states that "problems were encountered by Plaintiff Keerd with the high water elevations recorded. While these problems by no means rendered the lot unsuitable for building, the plans developed provided for a system more expensive and cumbersome than ultimately desirable." (R.p.4) The plaintiff concluded that further testing was required in order to develop plans for a "better and cheaper system." Accordingly, the plaintiff

informed defendant Robert D. Usen on April 26, 1980, one day after the initial septic system plans were filed with the Board of Health, that he wished to perform further tests on the defendants' property on Monday, April 28, 1980. The defendant agreed to the plaintiff's course of action.

The plaintiff accordingly scheduled additional tests for April 28, 1980. The plaintiff instructed his equipment operator, Mr. Kramer, to perform some preliminary work on the lot, but not to leave the premises unless ordered to do so by the police. On the morning in question, Mr. Kramer stated to defendant Virginia A. Usen that he had been instructed not to leave the lot except upon police order. After consultation with her husband, Mrs. Usen called the police who ordered Kramer to leave the property. The plaintiff subsequently called Post Road to protest the defendant's action.

The plaintiff also resubmitted revised septic system plans to the Board of Health on April 28, 1980.

On May 2, 1980, the plaintiff delivered a written notice of termination of the parties' purchase and sale agreement to broker Post Road. Said notice stated:

"Despite earnest and good faith efforts on my part to satisfy the above agreement, I was unable to make the required septic system determinations.

"Accordingly, I hereby demand the return of the $2,000.00 deposit and advise you of the fact that I have no further obligations to perform under this agreement.

"On several occasions, as you well know, you prevented me and/or my contractor access to the property. This prevented me from performing tests and consequently prevented me from making the determinations which I had the right to make under the conditions of the agreement.

"I want to put you on notice that I will proceed with all legal remedies to satisfy myself for the

damages you have caused me because of your lack of good faith and other breaches of the agreement."

Plaintiff Keerd instituted the present suit against the defendants on May 9, 1981. Subsequent to the events of April 28, 1980, but at a specific time not disclosed in the report, the plaintiff proposed a meeting with the defendants. Defendant's counsel responded that there would be no point in a meeting between the parties to discuss the situation.

Additional evidence was introduced exclusively on the issue of mitigation of damages. Such evidence established that the defendants offered on May 8 and 9, 1980 to permit the plaintiff to do any further work necessary to secure a septic system permit for the property. The defendants also proposed that the contract date for the delivery of the deed be extended to May 30, 1980, and that the plaintiff proceed with the parties' agreement. These offers were rejected by the plaintiff. The report indicates that no evidence was advanced relative to the plaintiff's ability, or lack thereof, to perform further tests subsequent to May 8 but prior to May 15, 1980, the extended date permitted for such testing by the Weston Board of Health.

No closing of the parties' transaction took place. The deed was not delivered and title did not pass. Post Road did not receive a commission. The defendants ultimately sold the real estate in question for $85,000.00. A septic system permit for the property was obtained by the purchasers; and construction of a four-bedroom, single-family dwelling had been commenced at the time these actions were installed. The report states that the "Director of the Board of Health and Keerd testified that Keerd could have obtained a Board of Health permit concerning the septic system if his plans were revised."

Relative to his claim for loss of prospective profits, the plaintiff testified that he had previously developed other Weston real estate which posed greater challenges than the defendants' lot in terms of securing Board of Health septic system approval. The plaintiff alleged that if he had obtained the permit and if he had constructed a four-bedroom, single-family residence and if he had sold the same, he would have derived a $59,950.00 net profit from the transaction. The report states that plaintiff Keerd's statements concerning the potential fair market value of the proposed dwelling on resale was supplemented by the testimony of another Weston builder and by one Grace Trefry, a Post Road Realty, Inc. broker. The plaintiff also testified that if he had performed the envisioned testing and if he had actually obtained the requisite permit, he would have purchased the realty in accordance with the parties' written agreement.

The trial court initially entered judgment for the defendants in both actions on April 30, 1981. On May 8, 1981, the plaintiff filed a Motion for New Trial or To Amend Finding and Judgment primarily on the grounds that the court's subsidiary and ultimate findings were contrary to the weight of the evidence and erroneous as a matter of law. The trial court denied the plaintiff's Dist./Mun. Cts. R. Civ. P. 59 motion for a new trial, but entered an amended finding as follows:

"Plaintiff Keerd, as buyer, defendants Usen, as sellers, and plaintiff Post Road executed a purchase and sale agreement for a lot of land on Hickory Road, Weston. The agreement was contingent upon Keerd obtaining approval of a septic system design after performing necessary percolation tests by April 30, 1980. This deadline was extended by agreement to May 2, 1980.

"Keerd did perform various tests, designed and submitted such a design to the Weston Board of Health. The system was not approved. Keerd sent an employee to the lot on April 28,

1980 to perform further tests; however the sellers prevented the employee from working on the premises or performing any further tests on that day. Defendants did not prevent Keerd or employee access on any other day. On May 2, 1980 Keerd wrote to defendants stating he was exercising his option to terminate the contract pursuant to the terms of the purchase and sales agreement.

"The plaintiff Keerd, having expressly exercised his option to terminate under paragraph 29B of the purchase and sale agreement, has no right to recover prospective profits for breach of that contract. Plaintiff Keerd is entitled to the return of his deposit under the terms of the agreement, to wit; 'Buyer's deposit shall be refunded thereupon by seller to buyer, without further obligation between the parties.'

"Defendants made subsequent offers (May 8, May 9, 1980) to plaintiff Keerd to allow him to do any work necessary to obtain approval of septic system. Said offers were rejected by plaintiff.

"There was no wilful default by the sellers.

"Since the buyer exercised his right under the terms of the purchase and sale agreement to terminate the contract the plaintiff Post Road Realty has not earned its commission. In addition, the clear and unambiguous language of the agreement states that a commission becomes due 'if, as and when a deed is delivered,' which did not occur.

"I find for the plaintiff Keerd in amount of $2,000.00.

"I find for defendants in Post Road Realty vs. Usen."

Plaintiffs Keerd and Post Road Realty,

Inc. have prosecuted an appeal to this Division on a charge of error in both the trial court's denial of their Dist./Mun. Cts. R. Civ. P. 59 motion for a new trial; and the court's disposition of various requests for rulings of law. Plaintiff's requests numbers 30 and 31, which sought required findings on Counts 2 and 3 of the plaintiff's complaint, are now moot in view of the court's amended finding for the plaintiff in the full amount of the plaintiff's $2,000.00 deposit. Similarly, the plaintiff has not been prejudiced by the court's denial of requested rulings numbers 32 and 33 which pertained to the defendants' counterclaims. The court did not enter judgment for the defendants on said counterclaims.

The remaining requests for rulings of law submitted by the plaintiff and Post Road which form the basis of this appeal are as follows:

"29. A finding for Plaintiff is required relative to Count 1 of the Complaint.

DENIED.

"34. A finding is required to the effect that Defendants have failed to sustain their burden of proving that plaintiff unreasonably failed to minimize his damages following May 2, 1980.

DENIED.

"1. (a) When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner; (b) the purchaser enters into a binding contract with the owner to do so; and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. (b) If the contract is not consumated because of lack of financial ability of the buyer to perform or because of any other default of his, there is no right to commission against the seller. (c) on the other hand, if the failure of

completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid.

NO ACTION TAKEN BY THE COURT.

"2. Parties to contract and commercial transactions must act in good faith toward one another; parties to contracts or commercial transactions are bound by the standard of good faith and fair dealing. See **Fortune v. National Cash Register Co.**, Mass. Adv. Sh. (1977) 1569, 364 N.E. 2d 1251 (1977).

NO ACTION TAKEN BY THE COURT.

"18. A finding for Plaintiff (Post Road) is required under Count 1 of Plaintiff's Complaint.

NO ACTION TAKEN BY THE COURT.

"21. A finding for defendants is not warranted under Count 1 of Plaintiff's (Post Road's) Complaint.

NO ACTION TAKEN BY THE COURT."

1. There was no error in the trial court's denial of plaintiff Keerd's requested rulings number 29 and 34 as the plaintiff was not entitled to recover for any loss of prospective profits as a matter of law herein. To prevail on a contract theory of action in the case at bar, it was essential for the plaintiff to establish not only his willingness and ability to perform in accordance with the parties' written purchase and sale agreement, but also the defendants' breach of the same. See, e.g., **Rombola v. Cosindas**, 351 Mass. 382, 384 (1966). The reported evidence clearly disclosed, however, that the ultimate failure of the parties' realty transaction was the direct consequence not of the defendants' breach but of the plaintiff's voluntary election to cancel the parties' purchase and sale agreement.

Said agreement expressly provided that in the event septic system tests and permit were not obtained before a specified date, the "buyer, at its sole option, may terminate this Agreement . . . and buyer's deposit shall be refunded . . . without further obligation between the parties." This clause obviously operated for the exclusive benefit of the plaintiff and, as such, could have been waived by him. See **DeFreitas v. Cote**, 342 Mass. 474, 477 (1961); **Parkhurst v. Maynard**, 285 Mass. 59, 63-64 (1933). In choosing instead to exercise his sole option to terminate the parties' contract, the plaintiff must be deemed to have also chosen to proceed "without further obligation between the parties" in accordance with this option. The plaintiff cannot logically convert his unilateral termination into an actionable breach of the agreement by the defendants. As the plaintiff's failure to obtain the defendant's realty was solely the result of the plaintiff's contract termination and refusal to purchase, a loss of any prospective profits arising from such failure cannot be charged to the defendants who remained ready, willing and able to proceed with the sale transaction. In short, the plaintiff cannot recover on a contract which he himself has voluntarily terminated.[1]

---

[1] The plaintiff's reliance on **Factor Realty Corp. v. Corbin Holmes Co.**, 312 Mass. 325 (1942) to invoke a contrary proposition of law herein is misplaced. The Supreme Judicial Court held in **Factor** that as the cancellation of a contract does not end all accrued liability thereunder, terminating the parties' contract, **Factor** does not stand for the plaintiff's contention that a party may cancel a contract and then sue the non-terminating party on said contract to recover prospective damages. There was no attempt by the defendants herein to cancel the parties' contract to escape any existing liability. Moreover, the plaintiff has made no claim for accrued damages which may, assuming **arguendo**, have flowed from the defendants' ejection of the plaintiff's contractor from their property on April 28, 1980. The plaintiff's suit is limited to a claim for loss of prospective profits which could have only been earned by the plaintiff if he had proceeded with the realty purchase. The defendants cannot be charged with such loss upon a failure to do that which the plaintiff's cancellation put beyond their power to do; namely, sell and convey their property to the plaintiff. In this sense, it is the plaintiff who appears to be attempting to take advantage of the nonperformance of a contract when he himself has prevented its performance.

The plaintiff endeavors to characterize the events of April 28, 1980 as a total breach or repudiation by the defendants of the parties' purchase and sale agreement which excused the plaintiff from further performance under the contract and which justified, if not compelled, his cancellation of the contract. Such endeavor is wholly unpersuasive. It is a familiar tenet of contract law that one who prevents the performance of a contract cannot take advantage of its nonperformance. **Frank Fitzgerald, Inc. v. Pacella Bros., Inc.,** 2 Mass. App. Ct. 240, 242 (1947); **Felton v. Lorion,** 38 Mass App. Dec. 135, 137 (1967) and cases cited. Such prevention is a contract breach which excuses the other party from further performance and permits his recovery for damages sustained. **Quintin Vespa Co. v. Construction Serv. Co.,** 343 Mass. 547, 554 (1964); **Cetrone v. Paul Livoli, Inc.,** 337 Mass. 607, 610 (1958). The flaw in the plaintiff's analysis is that the events of April 28, 1980 cannot reasonably be construed as a breach by the defendants in the form of a material prevention of the plaintiff's performance or purchase of the defendant's realty.

Whether there has been a breach of a written contract presents a question of fact for the trial court. The court's determination herein that the actions of the defendants did not constitute a "wilful default" of the parties' contract finds unequivocal support in the reported evidence. The defendants' decision to order the plaintiff's contractor from their property on the morning of April 28, 1980 appears to be little more than a natural reaction to the inexplicably aggressive and hostile stance of the plaintiff's contractor. The defendants had permitted extensive testing on their property prior to April 28, 1980; continued to permit the plaintiff access to the property after that date; and at all times remained willing and able to complete the parties' transaction. Viewed in the context of the unnecessarily acrimonious atmosphere created by the plaintiff's curious instruction to his contractor, the defendants' limited interruption of one day's testing cannot be unreasonably magnified into either a default, breach or repudiation of the defendants' agreement to sell, or a material prevention of the plaintiff's purchase of the realty. Whether conduct constitutes such material prevention of the adverse party's contract performance is a question of fact for the trial court. See **McDonough v. Almy,** 218 Mass. 409, 418 (1914). The defendants did not "unqualifiedly forbid" **Ibid.** at 418 the plaintiff to proceed under the contract; "absolutely" repudiate the same; or refuse to convey the realty. **Schilling v. Levin,** 328 Mass. 2, 5 (1951); **Foternick v. Watson,** 184 Mass. 187, 192 (1903). The trial court's subsidiary findings on this issue must, therefore, be sustained.

Moreover, even assuming **arguendo** that the defendants had breached the agreement in question, it is unlikely that the plaintiff would have been entitled to a recovery of lost profits herein. The standard measure of damages for breach of a contract for the sale of land is the "difference between the value at the time the plaintiff was to have a conveyance of it and the price he was then to pay." **Widebeck v. Sullivan,** 327 Mass. 429, 434 (1951). See also **Rozene v. Sverid,** 4 Mass. App. Ct. 461, 465-466 (1976) and authorities cited. A purchaser is generally not entitled to show a loss of estimated profits or out of pocket expenses although "exceptional cases may arise where a departure from the usual rule is permitted." **Capaldi v. Burlwood Realty Corp.,** 350 Mass. 765 (1966). See, e.g. **Rombola v. Cosindas, supra** at 385-386; **Cetrone v. Paul Livoli, Inc., supra** at 610. This is not such an exceptional case. Loss of prospective profits may be recovered only when such loss

"is the proximate result of the breach, and is such as in the common course of events reasonably might have been expected at the time the contract was made, to ensue from the breach, and where it can be

determined as a practical matter with a fair degree of certainty what the profits would have been." *Narragansett & Co. v. Riverside Park & Co.*, 260 Mass. 265, 281 (1927). The reported evidence does not require a conclusion that prospective profits received from the plaintiff's eventual sale of a contemplated four bedroom structure were damages "which may be presumed to have been within the contemplation of the parties at the time the contract was made as a probable result of a breach of it." *Hall v. Paine*, 224 Mass. 63, 69 (1916). See also *Boylston Housing Corp. v. O'Toole*, 321 Mass. 538, 562-563 (1947). Although the report states that the defendants understood that the plaintiff's express purpose in purchasing the lot was to build and then sell for profit a four bedroom, single family home, the plaintiff testified that he might have utilized the property to build a personal residence. Further, the plaintiff's failure to purchase the defendants' realty did not result in the interruption or termination of an existing business enterprise with an established or reasonably estimatable earnings record.

In summary, the plaintiff has failed to establish the defendants' breach of the parties' purchase and sale agreement, and is thus not entitled to damages as a matter of law. *Limpus v. Armstrong*, 3 Mass. App. Ct., 19, 24 (1975). The plaintiff elected to terminate the parties' agreement and to proceed "without further obligation between the parties."

2. There was also no error in the trial court's disposition of Post Road's requested rulings numbers 1, 2, 18 and 21. These requests were properly denied[2] by the trial court as inconsistent with the court's subsidiary findings. Said findings can be readily sustained on the basis of the reported evidence.

The contractual provision governing Post Road's right to a broker's commission herein expressly provided that such commission was due "if, as and when the deed is delivered." The construction of this contract clause presented a question of law for the trial court. *Robert Indus. Inc. v. Spence*, 362 Mass. 751, 755 (1973); *Tri-City Concrete Co. v. A. L. A. Constr. Co.*, 343 Mass. 424, 427 (1962). In the process of contract construction, the court must accord all unambiguous terms their ordinary and usual meaning. *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 84 (1956). The phrase "if, as and when the deed is delivered" is clear and unequivocal. These words, and similar phraseology incorporating the term "if" or other provisory language, have been consistently interpreted and identified as establishing a condition precedent to a real estate broker's right to recover a commission. Until the satisfaction of the specified condition, the broker is not entitled to a fee and the seller incurs no liability therefor. See *Gaynor v. Laverdure*, 362 Mass. 828, 836 (1979); *Spritz v. Brockton Sav. Bk.*, 305 Mass. 170, 171 (1940); *Ivas v. Galligan*, 271 Mass. 410, 415 (1930); *Canton v. Thomas*, 264 Mass. 457, 459 (1928); *Goldman v. Eisenberg*, 256 Mass. 566, 567 (1926); *Creed v. Apog*, 6 Mass. App. Ct. 365, 372 (1978); *Kiernan Realty Co. of Randolph, Inc. v. Michetti*, 1981 Mass. App. Deiv. Rep. 41, 45.

As the deed for the realty at issue in the instant case was never delivered to the plaintiff, the condition precedent to Post Road's right to recover a commission remained unfulfilled. As said condition was not satisfied, Post Road was not entitled to a commission herein. To hold otherwise would require an improper disregard of the express contract terminology employed by the parties to establish the condition precedent. In construing a written contract, effect must be given to every word used therein. *Gloucester Mutual Fishing Ins. Co. v. Boyer*, 294 Mass. 35, 39 (1936).

---

[2]When no action has been taken upon requests for rulings of law, such requests are deemed on appeal to have been denied. **Paperades, Inc. v. Crawford**, 51 Mass. App. Dec. 1, 9 & 1973); **Hall v. Daggett**, 47 Mass. App. Dec. 28, 31-32 (1971).

We reject Post Road's contention that wrongful conduct or interference by the defendants herein solely prevented the fulfillment of the condition precedent at issue. See **Cellucci v. Sun Oil Co.**, 2 Mass. App. Ct. 722, 733 (1974). It is undeniable that a default or other unauthorized conduct by the seller will permit the recovery of a broker's commission even in those instances where conditions precedent to commission payment remain unsatisfied or where the realty transaction in general fails in consequence of such seller conduct. **Tristam's Landing, Inc. v. Wait**, 367 Mass. 622, 629 (1975). The dissolution of the parties' purchase and sale transaction herein, however, resulted exclusively from plaintiff Keerd's unilateral election to terminate the parties' agreement. Such termination was not a function of any default, repudiation, bad faith or wrongful act of the defendant sellers intended to deprive Post Road of its commission. Compare **Kenny v. DiCenso**, Mass. App. Ct. Adv. Sh. (1980) 1023; **Kinchla v. Welsh**, 8 Mass. App. Ct. 367, 371-372 (1979); **Lipis v. Landano**, 7 Mass. App. Ct. 894 (1979); **Creed v. Apog, supra** at 372.

3. Finally, we perceive no inconsistency or error of law in the trial court's subsidiary or ultimate findings which would have necessitated an amendment thereof or a new trial. There was thus no error in the trial court's denial of the plaintiff's Dist./Mun. Cts. R. Civ. P. 59 motion.

There being no error, the report is dismissed.

Elliott T. Cowdrey, P.J.
James B. Tiffany, J.
H. Lawrence Jodrey, J.