Lenhoff, J.
The complaint sets forth an action sounding in tort and contract, commenced in the District Court, transferred to the Superior Court, and transferred back to the District Court as- per 6.L. c. 231, § l()2cr as amended. The plaintiffs seek by the institution of the instant action to recover lost profits they claim were sustained by reason of their contracted advertisement in the 1982 Holyoke Yellow Pages Directory which the defendant failed to include therein.
The defendant admitted a breach of contract. It denied negligence; and, that damages resulted proximately from its breach, or that damages may be shown with reasonable certainty.
At the trial, evidence was presented of the earning records of the plaintiffs for the years 1981,1982 and 1983. The four plaintiffs’ law firm was created in March of 1981. In that year, each firm member was individually listed correctly in the yellow pages directory in alphabetical order. They had contracted for the 1982 Holyoke Yellow Pages listing which was omitted therefrom. The advertisement was properly published in 1983. Said earnings records revealed a nine month 1981 gross income of $271,937.00 and a net income of $180,642.00. This resulted in a net monthly income per partner of $5,117.00. (The figure $5,117.00 was used by the Trial Court. However, dividing $180,642 by 36 [9 months times 4 partners] equals $5,017.83 which is the corrected net monthly income per partner.) In 1982, the firm’s gross income was $302,403.00 and its net income was $194,205.00, resulting in a net monthly income per partner of $4,045.93 per month. [Dividing $194,205.00 by 36 gives a corrected figure of $4,045.93.) For the twelve month period of 1983, the firm grossed $365,348.00 with a net income of $250,409.00, resulting in a net monthly per partner income of $6,122.00. (Said figure of $6,122.00 was used by the Trial Court. However, dividing $250,409.00 by 48 [12 months times 4 partners] equals $5,216.85, not $6,122.00.)
Further evidence adduced indicates the plaintiffs were general practitioners, handling multiple areas. Their billings were on an hourly, flat rate and continuing basis. A portion of their income each year represented payments from work commenced in previous years with the effect of this overlap probably the same from year to year. During the years 1981 through 1983, inclusive, the plaintiffs worked substantially the same number of hours, kept the same office hours and took like time off for vacations and for civic activities.
*222 The Trial Court found for the plaintiffs in the sum of $48,240.00. Such damages were apparently arrived at by the Trial Court as follows:
1980 net monthly income per partner: $6,122.00
minus 1981 net monthly income per partner: - 5,117.00
monthly per partner income net difference: 1,005.00
Total 1983 partner months (4x12) x 48.00
Total damages $48,240.00
All the requests for rulings that the defendant lists as its grievances, in effect, contend that the damages awarded lack support in the evidence as a matter of law.
Our review, in response thereto, will be decisive of the instant appeal. Therefore, the presented issue for determination is whether the Trial Court, based on the evidence involved, was justified in its damage award and whether it applied correct legal principles pertaining to loss or prospective profits.
We are cognizant that lost profits are recoverable as damages for breach of contract, although difficulty may be encountered to fit applicable law to a particular case. “The loss of prospective profits may be allowed .... where it appears that the loss was the natural, primary and probable consequence.of the breaqh, that the profits arising from the performance of the contract or the loss likely to result from its non-performance were within the contemplation of the parties and the profits were not so uncertain or contingent as to be incapable of reasonable proof.” Gagnon v. Sperry & Hutchinson Co., 206 Mass. 547,556 (1910). They must be the proximate result of the breach. “. .. . damages cannot be recovered when they are remote, speculative, hypothetical and not within the realm of reasonable certainty.” Lowrie v. Castle, 225 Mass. 37, 51 (1916). “The difficulty is not so much in the statement of the general principle as in applying it. A comparatively insignificant incident may be in such combination with others as to lead to a conclusion in one decision apparently at variance with that reached in others. Each case must be decided on its own facts under this necessarily somewhat broad and comprehensive proposition.” John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass. 8, 21-22 (1911). Lost profits are not required to be proved with mathematical precision. “Under our cases, an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence.” Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc., 14 Mass. App. Ct. 396, 426 (1982). Also prospective profits may be proved by established earning records. Matsushita Electric Corp. of America v. Sonus, Corp., 362 Mass. 246, 264 (1972); Rombola v. Cosindas, 351 Mass. 382, 385 (1966). Once a breach is established, the plaintiff is entitled at least to nominal damages. See Rombala v. Cosindas, supra, at page 384. Although damages must be reasonably ascertainable from the evidence, the fact that there is an element of uncertainty in their assessment does not bar recovery. Meager evidence, on occasion, leaves the fact finder to estimate and apply judgment. See Agoos Leather Cos., Inc. v. American and Foreign Ins. Co., 342 Mass. 603, 608 (1961).
The problem of assessing damages in a case of this type must be approached in a pragmatic fashion. We realize that it is virtually impossible to locate individuals who would have retained the plaintiffs had their firm been listed in the Yellow Pages during 1982. Utilizing the method employed by the Trial Court, although far from perfect, did evaluate net profit earnings during a time when there was no listing with such earnings after same was properly listed. Said Trial Court, in fulfilling its mission to be fair and just, by-passed the 1982 lesser net profit earnings and deducted the higher 1981 net profit earnings *223 from the 1983 net profit earnings when the same was properly listed, in order to arrive at the differential. Such differential represents the plaintiffs’ damages as corrected by this Appellate Division which totals $199.02 monthly and the sum of $9,552.96 for the year of 1982. The Trial Court could rightfully have concluded that the marked reduction in the plaintiffs’ 1982 earnings was attributable to the vicissitudes of the plaintiffs’ professional activities and same would have been upwardly augmented to the extent and amount found to have been the damages sustained. Such resulting damage assessment, in the existing circumstances, is considered to be reasonable and based upon the adduced evidence. The computation, as corrected, resulted from the utilization of a rational method founded on a firm basis of fact. The damages assessed are of a loss likely to have resulted from the defendant’s failure to perform, and is found to be within the contemplation of the parties, both of whom believed that Yellow Page listing or advertisement would increase the plaintiffs’ economic return. See Connery v. Cass, 277 Mass. 540, 545 (1931). Further, the profits found to have been lost by the defendant’s breach are not so uncertain or contingent as to be incapable of reasonable proof. The loss found did follow as a natural consequence of the breach and the claim was established on the actual earning records for a comparable period of time to thereby show a loss neither too remote nor too speculative. See Food Specialties, Inc. v. John C. Dowd, Inc., 339 Mass. 735, 747-748 (1955). As previously set forth herein, the uncertainty in assessing damages is not a bar to recovery as the amount thereof can seldom be proved with mathematical exactitude. “. . . much must be left to estimate and judgment, sometimes on meager evidence”. Agoos Leather Cos., Inc. v. American Foreign Ins. Co., supra.
To summarize, the Trial Court did possess reasonable basis to estimate the loss, although the evidence did not establish damages precisely to the penny. Same, however, would suffice to enable the Trial Court as the fact-finder to properly conclude the amount of lost net income. Based on all the existing circumstances, damages were capable of ascertainment by a sufficient number of reliable facts covering a reasonable informational field. To hold otherwise would ignore the wrongful conduct of the defendant and enable it to escape its responsibility because of the naturally inherent difficulty in estimating future or contemplated profits. Hence, we hold that the evidence was sufficient to support the Trial Court damage award.
Notwithstanding said award, we take the liberty, based on corrected figures, hereinbefore set forth, to readjust the figures accordingly. As corrected and repeated, they are:
YEAR GROSS INCOME NET INCOME NET MONTHLY INCOME/PARTNER
1981 $271,937 $180,642 $5,017.83
1982 302,403 194,205 4,045.93
1983 365,348 250,409 5,216.85
To conclude, the Judgment entered be and is hereby vacated with the following new judgment entered: — Judgment for the plaintiffs in the sum of $9,552.95 —Nunc Pro Tunc February 2, 1984. In all other respects, report dismissed.