Williams, P.J.
Although the appeal in this action arose from a 2005 jury verdict against the defendant attorney and defendant law firm, its roots lie in a 1994 motor vehicle accident in which the plaintiff, Mark Shinnick (“Shinnick”), was injured. The defendants, the Law Firm of Dane M. Shulman (“Shulman”) and Attorney David C. Rodibaugh (“Rodibaugh”) of that firm, claim that the malpractice verdict against them was flawed because Shinnick proffered insufficient evidence at trial to prove that a later-diagnosed ruptured disc resulted from his accident. Shinnick argues in his cross appeal to this Division that the judge improperly denied him interest on the jury award by calculating it from the date the suit was filed rather than from the date he first suffered pecuniary loss. We find no error in either the jury verdict or the interest calculation, and dismiss the parties’ cross appeals.
In January, 1994, the car in which Shinnick was riding was rear-ended by a bus in Wellesley. Shinnick hired legal counsel for his personal injury claim, and then transferred his case five years later in June, 1999, to Shulman, where Rodibaugh assumed the case. Rodibaugh told Shinnick that the potential value of his case turned on whether Shinnick’s D5 ruptured disc, first diagnosed in 1998, could be causally connected to his 1994 accident. In September, 1999, Shinnick’s treating orthopedic surgeon, Dr. Lawrence Geuss (“Geuss”), provided a report about Shin-nick that omitted opinion language connecting Shinnick’s disc condition to the 1994 accident.[2] Because Rodibaugh found the letter “ambiguous” in causally linking Shinnick’s injuries to the accident, he called Geuss. Rodibaugh spoke to someone named “Chris” in Geuss’s office who told him that Geuss could not causally relate Shinnick’s back injury to the accident because of the lapse of time between the accident and Geuss’s treatment.
The case went to mediation in 2000, and was settled for $10,000.00. The highest previous settlement offer had been $500.00, and the demand as of November, 2000 was $90,000.00. After that settlement but before the proceeds were paid, Shinnick was sued in the Dedham District Court by Dr. Asher Leeder (“Leeder”), a chiro *107 praetor who had treated Shinnick in 1996 for his neck injury.[3] Rodibaugh had Leeder’s records and bills at the time of mediation, and Leeder’s G.L.c. 233, §79G certification stated that the “REMAINING BALANCE ON ACCOUNT’ totaled $2,360.00. Rodibaugh defended both Shinnick and Shulman in Leeder’s suit. The claim against Shulman was dismissed on its motion for judgment on the pleadings. The trial resulted in a $2,900.00 judgment against Shinnick.
Shinnick then filed this suit against Shulman and Rodibaugh, alleging that Rod-ibaugh was negligent in, among other respects, recommending settlement in the inadequate amount of $10,000.00. At the malpractice trial, the jury awarded Shin-nick $40,000.00 against Shulman and Rodibaugh. The key to Shinnick’s case was testimony from his legal expert, Attorney William Royal (“Royal”). Royal testified that although Geuss’s September 12, 1999 report failed to establish causation, Rodibaugh’s representation of Shinnick fell short of the acceptable standard of legal practice because Rodibaugh neglected either to seek clarification from Geuss-as to his causation opinion, or to have obtained another expert to furnish such an opinion, or both.[4] Royal also opined that Rodibaugh breached the standard of practice in recommending the $10,000.00 settlement amount without accounting for Leeder’s outstanding claimed balance of $2,360.00, which was in addition to an outstanding Mass. Health lien of $4,313.57. As Royal testified, deducting those lien amounts and attorney’s fees and expenses from the $10,000.00 settlement left Shinnick with nothing.
Shulman and Rodibaugh attack Royal’s testimony on the ground that he lacked the requisite experience with automobile tort cases to render the opinions he gave. They further contend that because Shinnick did not adequately establish causation, he could not have recovered more than the settlement amount obtained by Rodibaugh and, thus, the jury verdict against them in this malpractice case cannot stand.
Both arguments lack merit. We note first that the record is devoid of any objection by Shulman and Rodibaugh to Royal’s testimony. Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 610 n.63 (2007), citing Rombola v. Cosindas, 351 Mass. 382, 386 (1966); see also Palandjian v. Foster, 446 Mass. 100, 105 n.7 (2006). No objection was lodged before or during that testimony, even when Shinnick’s counsel asked the trial judge to qualify Royal as an expert. It is the court’s function to determine whether a witness qualifies as an expert. See, e.g., Morgan v. Laboratory Corp. of Am., 65 Mass. App. Ct. 816, 822 (2006). “A witness’s opinion would ... be admissible as evidence ... if his qualifications as an expert are accepted by the trial judge.” Brewster Wallcovering Co., supra at 610 n.63, quoting Rombola, supra at 386. Here, the trial judge did just that, and without objection. Shulman and Rodibaugh have not shown that the trial judge abused her broad discretion in implicitly declaring Royal an expert in tort litigation and allowing the jury to consider his testimony. Clearly, once the expert testi *108 mony was admitted, the jury were free to credit it wholly, partially, or not at all, as they saw fit.
Shulman and Rodibaugh also suggest that the lack of medical-causation evidence at the malpractice trial prevented the jury from properly finding that Shin-nick prevailed on the “trial within a trial” that is a legal malpractice case. See, e.g., Kourouvacilis v. American Fed. of State, County & Mun. Employees, 65 Mass. App. Ct. 521, 532 n.16 (2006), citing, inter alia, Fishman v. Brooks, 396 Mass. 643, 647 (1986). Stated another way, since Shinnick still lacked the causation opinion from Geuss, the jury could not properly have found that Shinnick should reasonably have expected to recover more than Rodibaugh had secured for him.
Although Geuss had not invoked in his reports the traditional talismanic language regarding medical causation, such an incantation is not critical in order to establish a causal link. Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 235 (2005). The medical evidence in its totality was sufficient to establish causation. Detailed recitation of that evidence is unnecessary, but we note that Leeder treated Shinnick from January to July, 1996, and explicitly related his treatments and Shinnick’s residual spinal instability to the accident two-and-a-half years before. Rodibaugh’s contentions that the opinion of an orthopedic surgeon would likely carry more weight with a jury than that of a chiropractor, and that the opinion of a plaintiffs treating physician is especially significant, do not alter the fact that the jury in this case could have inferred causation from the total medical evidence presented.
As for Shinnick’s cross-appeal, he assigns as error the court’s award of interest starting on the commencement date of the action, September 1, 2004, see G.L.c. 231, §633, rather than the earlier date on which the trial of the bus case had been scheduled to begin, January 8, 2001. To constrict the period of interest in such a way, Shinnick argues, results in a significant “gap” of interest and thus an inequitable recovery. But, as Shinnick acknowledges, there is scant authority dictating a starting date for the calculation of interest in legal malpractice cases. Besides citing Massachusetts authority recognizing the salutary purposes of interest awards generally, e.g., McEvoy Travel Bureau v. Norton Co., 408 Mass. 704, 717 (1990), and approving them specifically in legal malpractice actions, e.g., McLellan v. Fuller, 226 Mass. 374, 379 (1917), Shinnick has mustered only one, foreign appellate decision touching the issue. Power Constructors, Inc. v. Taylor & Hintze, 960 P.2d 20 (Alaska 1998). Power Constructors, however, assumes that “[djamages normally carry interest from the time a cause of action accrues,” Id. at 36, and thus, does not reflect Massachusetts law. G.L.c. 231, §6B (date of commencement of action). We do not, then, consider Power Constructors persuasive, and have found no other authority compelling a conclusion that the trial judge erred in calculating pre-judgment interest from the date the action was commenced.
The appeal and the cross appeal are dismissed.
So ordered.

 The only swipe at causation in the three-page letter appears in the opening paragraph in which Geuss noted that Shinnick “related this [history of ‘pain and discomfort in his back and numbness in his left leg’] back to a motor vehicle accident in 1994.” In a subsequent letter on July 5, 2005, Geuss again noted that Shinnick himself had consistently related his back pain to the accident and had described no other injury besides those received in the 1994 accident. Geuss stated in that 2005 letter that “the type of injury that he had the L5-S1 disc that was excised [sic] certainly is the type of injury that can occur during a motor vehicle accident.”

 Leeder was apparently not paid by the bus company’s PIP carrier because his treatment of Shinnick began more than two years after the accident. Rodibaugh told Shinnick that Shinnick’s prior counsel should pay Leeder’s bills.

 Specifically, Rodibaugh acknowledged that Geuss’s September 12,1999 opinion letter lacked the causation phraseology “we’re all familiar with in the ordinary practice of tort law.” He opined that it was “standard” for tort lawyers dealing with treating physicians to return to them for clarification, if necessary. Royal further testified that Rodibaugh could have, and probably should have, also tried to obtain another expert to establish causation. Finally, Royal evaluated Shinnick’s case as one in the $70,000.00 to $125,000.00 range, and opined that the $10,000.00 settlement recommendation made at mediation was “not even in the universe of what should have been suggested.”